UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                                          Chapter 11

Levy Ventures LLC,                                                                  Case No. 25-22182-SHL

                                            Debtor.
-------------------------------------------------------------x

**DEBTOR'S PRELIMINARY OMNIBUS OPPOSITION TO
MOTIONS TO BAR USE OF CASH COLLATERAL FILED
BY VARIOUS MORTGAGEES**

The debtor herein, Levy Ventures LLC (the "Debtor"), by its counsel, Goldberg Weprin Finkel Goldstein LLP, as and for its Preliminary Opposition to multiple motions of various secured creditors seeking to prohibit the Debtor from using cash collateral and requiring the Debtor to make adequate protection payments, respectfully states as follows in support of the motion:

**INTRODUCTION**

1. While the Debtor is a real estate holding company, the Debtor is the farthest thing imaginable from a single asset Chapter 11 case. The Debtor is the fee owner of at least 125 residential one-family homes and 5 two-family homes located in and around Baltimore, Maryland (the "Properties").

2. The business model as developed by the Debtor in 2023 was to acquire and refurbish the Properties for leasing primarily to Section 8 government sponsored tenants. The Debtor has had mixed success in implementing this business plan. Many of the Properties (approximately 50 homes) are currently vacant and require operating DIP loans to make necessary repairs and improvements to attract new tenants. Approximately 35 of the homes are currently occupied by rent-paying tenants so there are operating funds available to pay adequate protection on those Properties. Unfortunately, the balance of the homes (approximately 45) cannot be easily

rehabilitated and the Debtor is considering surrendering and returning title to the respective lenders. A complete of the three (3) categories of Properties is attached hereto as Exhibit "A".

3. For purposes of this Preliminary Opposition[1], the Debtor is certainly cognizant of the need to obtain consent for use of the rents as cash collateral based on agreed budgets for taxes, insurance and upkeep, plus the need to start making adequate protection payments on the Properties where cash flow exists. As to the non-income producing Properties, adequate protection can take the form of alternative measures, such as safeguarding the Properties and seeking DIP financing for repairs to attract new tenants. All of these avenues are still being developed, but the Debtor does, at least, have a strategy to move forward.

## THE MOVING LENDERS

4. The motions, filed by the mortgage servicers Shellpoint [ECF No. 26], Fay Servicing [ECF No. 30], US Bank Trust (Stone Roots) [ECF No. 50 and 68], US Bank Trust (Determination Mortgage Trust) [ECF No. 51 and 66], Wilmington Savings (Ibis Holdings A Trust) [ECF No. 52 and 67], Wilmington Savings (Verus Securitization Trust) [ECF No. 59], and US Bank Trust (Fidelity & Guaranty Life) [ECF No. 69] (collectively, the "Lenders"), are substantially similar, seeking the same form of relief with respect to the different Properties of the Debtor, identified below.

5. As set forth herein, the Debtor is proposing that a relatively significant number of Properties start making monthly cash payments, and intends to seek to DIP financing for the other Properties not designated for surrender. Accordingly, the Debtor seeks additional time to negotiate

---

[1] The Debtor is cognizant that this Preliminary Opposition is beyond the Local Rule requirements regarding the filing of Opposition one week prior to the hearing, and the Debtor requests that this circumstance be excused. The preparation of the attached schedules took more time than anticipated and the Debtor's CRO and principal are highly observant Jews who have been unavailable for the recent holiday period.

the terms of suitable cash collateral and adequate protection arrangements as to homes that can potentially be saved.

## BACKGROUND

6. On March 5, 2025 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code. The Debtor remains in possession of its assets and is operating its business and managing its property as a debtor-in-possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

7. No request for the appointment of a trustee or examiner has been made, and no committees have been appointed or designated.

8. During the period beginning in March 2023 and ending in August 2024, the Debtor purchased 125 single-family dwellings and 5 two-family dwellings in and around Baltimore, Maryland (each a "Property" and collectively, the "Properties"). The collective purchase price of the Properties was $29,479,726, with a current estimated value of $19,671,500, based on an average value of $151,319.23.

9. In conjunction with the purchase of the Properties, the Debtor obtained a series of mortgage loans from a group of lenders and mortgagees.

10. As part of the original business plan, a large portion of the Properties were meant to be leased to Section 8 tenants. The Debtor even changed management companies to retain a perceived Section 8 specialist in order to position the Debtor in navigating the HUD requirements of Section 8 housing.

11. Unfortunately, the new property management company did not work out, and left the Debtor with many vacancies and inadequate cash flow. Exacerbating matters, the new property

management company failed to properly or timely communicate with existing tenants and prospective tenants, as well as representatives of HUD.

12. As a consequence, the Debtor fell behind in mortgage payments and was plagued by a freeze on rent payments. The Debtor still hopes to revive the relationship with HUD.

13. To that end, the Debtor has replaced the management company, and entered into retention agreements with Ephraim Diamond as Chief Restructuring Officer to guide the Debtor through the Chapter 11 process, and CPS CRE, LLC ("CPS") a distressed real estate consulting firm to assist the Debtor in its loan restructuring negotiations. Motions to approve the retention agreements with Mr. Diamond and CPS have been prepared and will be filed prior to the hearing on the instant Motions.

## THE PROPOSAL

14. In the meantime, the Debtor has reviewed its Properties in light of the Chapter 11 filing and the Motions, and has initially divided the Properties into three groups: (a) those Properties that are currently income producing and which the Debtor proposes to retain and commence making adequate protection payments; (b) those Properties that are potentially income producing but require upfront capital investments for repairs and improvements for which the Debtor proposes to obtain DIP financing to fund such repairs; and (c) those Properties that are non-income producing and which the Debtor proposes to surrender (the "Proposal"). For ease of reference, the chart presented as Exhibit "A" is reproduced in Exhibit "B" sorted by the ECF No. of the respective Motions; and is further reproduced in Exhibit "C" sorted by the respective Lenders.

15. Several of the Movants previously agreed to adjourn their Motions to June 5, 2025 to afford the Debtor time to complete its analysis and make the Proposal. There are now ten

motions returnable on June 5, 2025, while additional motions to bar use of cash collateral or for stay relief have been filed. Counsel for other lenders have advised of their intent to file similar motions in the coming weeks.

16. In light of the sheer volume of Properties and the number of secured mortgage lenders and servicers, it will take additional time for the Debtor to complete discussions with the various Movants and other secured creditors. The Debtor respectfully submits that the proposed surrender of certain Properties and initial cash payments with respect to other Properties amply demonstrates the Debtor's overall good faith, and that the Motions should be carried while the Debtor and its secured creditors review and discuss the Proposal. As part of the process, the Debtor also intends to finalize a formal budget of rent receipts and necessary operating expenses for those Properties that are occupied, plus a construction and repair budget for the other homes designated for surrender, so that a proper global cash collateral agreement can be negotiated with the appropriate lenders.

WHEREFORE, for all of the reasons set forth above, the Debtor respectfully prays for the entry of an Order consistent with the foregoing.

Dated: New York, New York
June 4, 2025

GOLDBERG WEPRIN FINKEL
GOLDSTEIN LLP
Attorneys for the Debtor
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700

By: /s/ Kevin J. Nash, Esq.