UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

-------------------------------------------------------------X

In Re:

LEVY VENTURES LLC,

                    Debtor.

-------------------------------------------------------------X

Case No. 25-22182-shl

Chapter 11

**NOTICE OF MOTION**

        Upon the annexed affirmation of Jenelle C. Arnold, Esq., dated June 26, 2025 and the exhibits

annexed thereto, U.S. Bank Trust National Association, not in its individual capacity but solely as

Delaware trustee for Stone Roots M Trust, a secured creditor, will move this court before the Hon.

Judge Honorable Sean H. Lane, United States Bankruptcy Judge, on the 30th day of July, 2025 at 2:00

PM in the forenoon of that day, or as soon thereafter as counsel may be heard, at the courthouse located

at 300 Quarropas Street, Room 248, White Plains, NY 10601 for an order pursuant to 362(d)(1) and

(2), of the Bankruptcy Code modifying the automatic stay so that U.S. Bank Trust National

Association, not in its individual capacity but solely as Delaware trustee for Stone Roots M Trust, as

secured creditor, can foreclose the mortgage it holds on the premises known as 4150 Eierman Ave,

Baltimore, MD 21206, on the grounds that (a) U.S. Bank Trust National Association, not in its

individual capacity but solely as Delaware trustee for Stone Roots M Trust is not adequately protected;

(b) Debtor has little or no equity in said premises; and (c) for such other and further relief as this Court

deems just and proper.

Dated: June 26, 2025

                                                    Respectfully submitted,

                                                    /s/ Jenelle C. Arnold
                                                    Jenelle C. Arnold, Bar No.: 5263777
                                                    Attorney for Movant
                                                    Aldridge Pite, LLP
                                                    3333 Camino del Rio South, Suite 225
                                                    San Diego, CA 92108
                                                    Telephone: (858) 750-7600
                                                    Email: jarnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

---------------------------------------------------------------X          Case No. 25-22182-shl

In Re:
                                                                          Chapter 11

LEVY VENTURES LLC,

                        Debtor.

---------------------------------------------------------------X

## MOTION FOR RELIEF FROM AUTOMATIC STAY
## (REAL PROPERTY)

U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL
CAPACITY BUT SOLELY AS DELAWARE TRUSTEE FOR STONE ROOTS M TRUST,
("Creditor") hereby moves this Court, pursuant to 11 U.S.C. § 362(d)(1) and (2) for relief from the
automatic stay with respect to certain real property of the Debtor having an address of 4150
Eierman Ave, Baltimore, MD 21206 (the "Property"), for all purposes allowed by law, the Note
(defined below), the Deed of Trust (defined below), and applicable law, including but not limited
to the right to foreclose.  Attached hereto as **Exhibit 1** is a background information form required
by local rules. In further support of this Motion, the undersigned respectfully states the following
under penalty of perjury:

## I.        STATEMENT OF FACTS

### A.  LOAN HISTORY

1.        The Debtor has executed and delivered or is otherwise obligated with respect  to
that certain promissory note in the original principal amount of  $148,000.00 (the "Note").   A
copy of the Note is attached hereto as **Exhibit 2**.  Creditor is an entity entitled to enforce the Note.

2.        Pursuant to that certain Purchase Money Deed of Trust, Assignment of Leases and
Rents, Fixture Filing, and Security Agreement (the "Deed of Trust"), all obligations (collectively,
the "*Obligations*") of the Debtor under and with respect to the Note and Deed of Trust are secured
by the Property. **The Deed of Trust includes an Assignment of Rents provision.** A copy of the
Deed of Trust is attached hereto as **Exhibit 3**.

3.      All rights and remedies under the Deed of Trust have been assigned to the Creditor pursuant to that certain assignment of Deed of Trust, a copy of which is attached hereto as **Exhibit 4**.

4.      The legal description of the Property and recording information is set forth in the Deed of Trust, a copy of which is attached hereto, and such description and information is incorporated and made a part hereof by reference.

5.      NewRez LLC D/B/A Shellpoint Mortgage Servicing services the underlying mortgage loan and note for the property referenced in this U.S. Bank Trust National Association, not in its individual capacity but solely as Delaware trustee for Stone Roots M Trust. In the event the automatic stay in this case is modified, this case dismisses, and/or the debtor obtains a discharge and a foreclosure action is commenced on the mortgaged property, the foreclosure will be conducted in the name of U.S. Bank Trust National Association, not in its individual capacity but solely as Delaware trustee for Stone Roots M Trust. Noteholder directly or through an agent, has possession of the promissory note. The promissory note is either made payable to Noteholder or has been duly endorsed. Noteholder is the original mortgagee or beneficiary or the assignee of the security instrument for the referenced loan.

**B.      PROCEDURAL HISTORY**

6.      On March 5, 2025, Debtor commenced the instant case by filing a voluntary petition under Chapter 11 of the Bankruptcy Code.

7.      To date, Debtor has yet to file and/or confirm a Chapter 11 Plan.

8.      To date, Debtor has yet to file a Motion to Use Cash Collateral.

**C.      LOAN STATUS**

9.      As of June 2, 2025, the outstanding amount of the Obligations less any partial payments or suspense balance is $175,812.13.

10.     The following chart sets forth the number and amount of payments due pursuant to the terms of the Note that have been missed by the Debtor as of June 2, 2025:

| Number of Missed Payments | From | To | Monthly Payment Amount | Total Missed Payments |
|---|---|---|---|---|
| 9 | 07/01/2024 | 03/01/2025 | $1,282.19 | $11,539.71 |
| 3 | 04/01/2025 | 06/01/2025 | $1,325.50 | $3,976.50 |
| Less partial payments (suspense balance): | | | | ($ 0.00) |
| Total: | | | | $15,516.21 |

11.     The estimated market value of the Property is $125,000.00.  The basis for such valuation is a Broker's Price Opinion, dated May 15, 2025, attached hereto as **Exhibit 5**.

12.     Upon information and belief, the aggregate amount of encumbrances on the Property listed in the Schedules or otherwise known, including but not limited to the encumbrances granted to Creditor, is $175,812.13.

**1.    Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(1).**

13.     Relief from the automatic stay is warranted under §362(d)(1) due to the lack of adequate protection. 11 U.S.C. §362(d)(1). The term "cause" is not defined in the Bankruptcy Code, and whether cause exists should be determined on a case by case basis. In re Sonnax Industries, 907 F.2d 1280, 1286 (2d Cir.1990). The decision of whether to lift the stay is committed to the sound discretion of the bankruptcy judge and may be overturned only upon a showing of abuse of discretion. Id. With respect to subsection (1), courts consider the factors the Second Circuit discussed in In re Sonnax Indus., 907 F.2d 1280. There, "the Second Circuit provided a non-exclusive list of factors that may be relevant in determining whether an automatic stay should be lifted for 'cause' under § 362(d)(1). [1]

---

[1] These factors include: "(1) whether relief would result in a partial or complete resolution of the issues; (2) lack of any connection with or interference with the bankruptcy case; (3) whether the other proceeding involves the debtor as a fiduciary; (4) whether a specialized tribunal with the necessary expertise has been established to hear the cause of action; (5) whether the debtor's insurer has assumed full responsibility for defending it; (6) whether the action primarily involves third parties; (7) whether litigation in another forum would prejudice the interests of other creditors; (8) whether the judgment claim arising from the other action is subject to equitable subordination; (9) whether movant's success in the other proceeding would result in a judicial lien avoidable by the debtor; (10) the interests of judicial economy and the expeditious and economical resolution of litigation; (11) whether the parties are ready for trial in the other proceeding; and (12) impact of the stay on the parties and the balance of harms." *In re Sonnax Indus.*, 907 F.2d at 1286.

14.     A debtor's failure to make contractual payments constitutes cause for relief under §362(d)(1).  In re Taylor, 151 B.R. 646, 648 (E.D.N.Y. 1993); In re Heath, 79 B.R. 616, 617 (Bankr.E.D.Pa.1987); In re Fennell, 495 B.R. 232, 239 (Bankr. E.D.N.Y. 2012) (concluding that cause existed to lift the automatic stay when debtor failed to make mortgage payments, and failed to "introduce [any] evidence to contradict [the] assertion that she is delinquent on her mortgage payments"); See also, In re Davis, 64 B.R. 358, 359 (Bankr.S.D.N.Y.1986) (holding that a debtor's failure to make mortgage payments after confirmation of the Chapter 13 plan is sufficient grounds for lifting the stay without any further inquiry into adequate protection). The court maintains the right to grant relief from stay for cause when a debtor has not been diligent in carrying out his or her duties in the bankruptcy case, has not made required payments, or is using bankruptcy as a means to delay payment or foreclosure. In re Harlan, 783 F.2d 839 (9th Cir. 1986); In re Ellis, 60 B.R. 432 (B.A.P. 9th Cir. 1985).

15.     Here, Creditor is not adequately protected as Debtor failed to make payments owed on the Note. The contractual payment default totals $15,516.21, which continues to increase. As a result, Debtor has not been diligent in carrying out his or her duties in the bankruptcy case and has not made required payments. In re Harlan, 783 F.2d 839 (9th Cir. 1986). Further, by failing to pay the Note and/or taxes and insurance, Debtor is allowing the estate's interest in the Property to decline as Creditor's Claim increases. The Bankruptcy Code was intended to afford financially troubled debtors a breathing spell from their creditors, but it was not Congress' intent to allow debtors to maintain their property while failing to pay their mortgages for extended periods of time; such an abuse of the protections afforded constitutes cause pursuant to § 362(d)(1).  In re Three Tuns, Inc., 35 B.R. 110, 111 (Bankr. E.D. Pa. 1983). As a result, relief from the automatic stay is warranted under 362(d)(1).

**2.     Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(A).**

16.     Relief from the automatic stay is warranted under §362(d)(2) due to the lack of equity in the Property. 11 U.S.C. §362(d)(2)(A). See In re Escobar, 457 B.R. 229, 242 (Bankr.

E.D.N.Y. 2011).

17.      Here, the value of the Property is $125,000.00 (See **Exhibit 5**). This valuation is offered for purposes of establishing cause for relief under §362(d)(2) only, and should not be relied upon for any other purpose. Creditor reserves its right to order an interior appraisal report to verify the current value of the Property. Creditor's lien totals $175,812.13. As a result, there is little to no equity in the Property to protect Creditor's interests and relief is appropriate under §362(d)(2)(A).

**3.      Relief from the Automatic Stay is Warranted Pursuant to 11 U.S.C. §362(d)(2)(B).**

18.      Relief from the automatic stay is warranted under §362(d)(2) as the Property is unnecessary for an effective reorganization. Once a Creditor under 11 U.S.C. § 362(d)(2)(A) establishes that a debtor or estate has no equity in property, it is the burden of the debtor or trustee to establish that the collateral at issue is necessary to an effective reorganization. 11 U.S.C. § 362(g)(2); United Sav. Ass'n of Texas v. Timbers of Inwood Forest Assocs. Ltd., 484 U.S. 365, 375–76 (1988). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the property will be needed for it; but also that the property is essential for an effective reorganization that is in prospect. This means that there must be a reasonable possibility of a successful reorganization within a reasonable amount of time. Timbers, 484 U.S. at 375.

19.      Here, Debtor failed to submit any evidence to suggest the Property itself is necessary for an effective reorganization. As the Property produces insufficient income to maintain expenses, it provides no benefit to the estate; and is therefore unnecessary for the Debtor's effective reorganization. If anything, the Property poses a burden to the estate as there is no equity in the Property and the Debtor lacks the income to cure the arrearage through a Plan. Thus, Debtor failed to meet his/her burden under 11 U.S.C. § 362(g)(2).

20.      Further, Debtor failed to provide evidence that a successful reorganization is in prospect within a reasonable time. As stated above, the Debtor must have more than visionary promises and willingness, Debtor must demonstrate concrete evidence of a sufficient cash flow to

fund and maintain both operations and obligations under a proposed Chapter 11 Plan. What this requires is not merely a showing that if there is conceivably to be an effective reorganization, the Property will be needed for it; but also that the Property is essential for an effective reorganization that is in prospect. This means that there must be a reasonable possibility of a successful reorganization within a reasonable amount of time. Timbers, 484 U.S. at 375.

21.     To date, Debtor has yet to file and/or confirm a Chapter 11 Plan. To date, Debtor has yet to file a Motion to Use Cash Collateral. As a result, there is no reasonable possibility of a successful reorganization within a reasonable amount of time and Creditor requests relief under 11 U.S.C. § 362(d)(2).

WHEREFORE, Creditor prays that this Court issue an Order terminating or modifying the stay and granting the following:

1.     Relief from the stay for all purposes allowed by law, the Note, the Deed of Trust, and applicable law, including but not limited to allowing Creditor (and any successors or assigns) to proceed under applicable non-bankruptcy law to enforce it remedies to foreclose upon and obtain possession of the Property;

2.     That the Order be binding and effective despite any conversion of this bankruptcy case to a case under any other chapter of Title 11 of the United States Code;

3.     That the 14-day stay described in Bankruptcy Rule 4001(a)(3) be waived;

4.     For such other relief as the Court deems proper..

Dated: June 26, 2025

Respectfully submitted,

/s/ Jenelle C. Arnold
Jenelle C. Arnold, Bar No.: 5263777
Attorney for Creditor
Aldridge Pite, LLP
3333 Camino del Rio South, Suite 225
San Diego, CA 92108
Telephone: (858) 750-7600
Email: jarnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

-------------------------------------------------------------X    Case No. 25-22182-shl

In Re:

LEVY VENTURES LLC,    Chapter 11

                Debtor.

-------------------------------------------------------------X    Exhibit 1

---

RELIEF FROM STAY - REAL ESTATE AND
COOPERATIVE APARTMENTS

---

I, Jasmine Heredia, Bankruptcy Case Manager
<NAME AND TITLE> OF
NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING AS SERVICER FOR U.S. BANK TRUST
NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS DELAWARE TRUSTEE
FOR STONE ROOTS M TRUST,
<NAME OF ORGANIZATION/CORPORATION/MOVING PARTY> (HEREINAFTER,
"MOVANT"), HEREBY DECLARE (OR CERTIIFY, VERIFY, OR STATE):

## BACKGROUND INFORMATION

1.     REAL PROPERTY OR COOPERATIVE APARTMENT ADDRESS WHICH IS THE
SUBJECT OF THIS MOTION: 4150 Eierman Ave, Baltimore, MD 21206

2.     LENDER NAME: U.S. Bank Trust National Association, not in its individual capacity but
solely as Delaware trustee for Stone Roots M Trust

3.     DATE OF MORTGAGE: March 23, 2023

4.     POST-PETITION PAYMENT ADDRESS: PO BOX 650840, DALLAS, TX 75265-0840

## DEBT/VALUE REPRESENTATIONS

5.     TOTAL PRE-PETITION AND POST-PETITION INDEBTEDNESS OF DEBTOR(S) TO
MOVANT AT THE TIME OF FILING THE MOTION: $175,812.13 (amount good as of
June 2, 2025)
(NOTE: this amount may not be relied on as a "payoff" quotation.)

6.     MOVANT'S ESTIMATED MARKET VALUE OF THE REAL PROPERTY OR
COOPERATIVE APARTMENT: $ 125,000.00

7.     SOURCE OF ESTIMATED VALUATION: Broker's Price Opinion, dated May 15, 2025

### STATUS OF DEBT AS OF
### THE PETITION DATE

8.      TOTAL PRE-PETITION INDEBTEDNESS OF DEBTOR(S) TO MOVANT AS OF
PETITION FILING DATE: $166,519.62

|  |  |
|---|---|
| A.   AMOUNT OF PRINCIPAL: | $148,000.00 |
| B.   AMOUNT OF INTEREST: | $9,432.12 |
| C.   AMOUNT OF ESCROW (TAXES AND INSURANCE): | $183.84 |
| D.   AMOUNT OF FORCED PLACED INSURANCE EXPENDED BY MOVANT: | $0.00 |
| E.   AMOUNT OF ATTORNEYS' FEES BILLED TO DEBTOR(S)PRE-PETITION: | $3,066.08 |
| F.   AMOUNT OF PRE-PETITION LATE FEES, IF ANY BILLED TO  DEBTOR(S): | $0.00 |

9.      CONTRACTUAL INTEREST RATE: 8.3750% (If interest is (or was) adjustable, please list the rate(s) and date(s) the rate(s) was/were in effect on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: .)

10.     PLEASE EXPLAIN ANY ADDITIONAL PRE-PETITION FEES, CHARGES OR AMOUNTS CHARGED TO DEBTOR'S ACCOUNT AND NOT LISTED ABOVE:

Default Interest:        $5,837.58

---

 (If additional space is needed, please list the amounts on a separate sheet and attach the sheet as an exhibit to this form; please list the exhibit number here: .)

## AMOUNT OF ALLEGED POST-PETITION DEFAULT
### (AS OF June 2, 2025)

11.    DATE LAST PAYMENT WAS RECEIVED: N/A

12.    ALLEGED TOTAL NUMBER OF PAYMENTS DUE POST-PETITION FROM FILING
OF PETITION THROUGH PAYMENT DUE ON June 1, 2025: Three (3) Payments

13.    PLEASE LIST ALL POST-PETITION PAYMENTS ALLEGED TO BE IN DEFAULT:

| ALLEGED PAYMENT DUE DATE | ALLEGED AMOUNT DUE | AMOUNT RECEIVED | AMOUNT APPLIED TO PRINCIPAL | AMOUNT APPLIED TO INTEREST | AMOUNT APPLIED TO ESCROW | LATE FEE CHARGED (IF ANY) |
|---|---|---|---|---|---|---|
| 4/1/2025 | $1,325.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 5/1/2025 | $1,325.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| 6/1/2025 | $1,325.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |
| TOTAL: | $3,976.50 | $0.00 | $0.00 | $0.00 | $0.00 | $0.00 |

14.    AMOUNT OF MOVANT'S ATTORNEYS' FEES BILLED TO DEBTOR FOR THE
PREPARATION, FILING AND PROSECUTION OF THIS MOTION: $1,350.00

15.    AMOUNT OF MOVANT'S FILING FEE FOR THISMOTION: $199.00

16.    OTHER ATTORNEY'S' FEES BILLED TO DEBTOR POST-PETITION: $0.00

17.    AMOUNT OF MOVANT'S POST-PETITION INSPECTION FEES: $0.00

18.    AMOUNT OF MOVANT'S POST-PETITION APPRAISAL/BROKER'S PRICE
OPINION: $0.00

19.    AMOUNT OF FORCED PLACED INSURANCE OR INSURANCE PROVIDED BY
THE MOVANT POST-PETITION: $0.00

20.    SUM HELD IN SUSPENSE BY MOVANT IN CONNECTION WITH THIS
CONTRACT, IF APPLICABLE: $0.00

21.    AMOUNT OF OTHER POST-PETITION ADVANCES OR CHARGES, FOR EXAMPLE
TAXES, INSURANCE INCURRED BY DEBTOR ETC.: $0.00

## REQUIRED ATTACHMENTS TO MOTION

Please attach the following documents to this motion and indicate the exhibit number associated with the documents.

(1)   Copies of documents that indicate Movant's interest in the subject property. For purposes of example only, a complete and legible copy of the promissory note or other debt instrument together with a complete and legible copy of the mortgage and any assignments in the chain from the original mortgagee to the current moving party. (Exhibit <u>2,3,4</u>.)

(2)   Copies of documents establishing proof of standing to bring this Motion. (Exhibit <u>2,3,4</u>.)

(3)   Copies of document establishing that Movant's interest in the real property or cooperative apartment was perfected, For the purposes of example only, a complete and legible copy of the Financing Statement (UCC-1) filed with either the Clerk's Office or the Register of the county the property or cooperative apartment is located in. (Exhibit <u>2,3,4</u>.)

## CERTIFICATION FOR BUSINESS RECORDS

I CERTIFY THAT THE INFORMATMION PROVIDED IN THIS FORM AND/OR ANY EXHIBITS ATTACHED TO THIS FORM (OTHER THAN THE TRANS ACTIONAL DOCUMENTS ATTACHED AS REQUIRED BY PARAGRAPHS 1, 2, AND 3, IMMEDIATELY ABOVE) IS DERIVED FROM RECORDS THAT WERE MADE AT OR NEAR THE TIME OF THE OCCURRENCE OF THE MATTERS SET FORTH BY, OR FROM INFORMATION TRANSMITTED BY, A PERSON WITH KNOWLEDGE OF THOSE MATTERS, WERE KEPT IN THE COURSE OF THE REGULARLY CONDUCTED ACTIVITY; AND WERE MADE BY THE REGULARLY CONDUCTED ACTIVITY AS A REGULAR PRACTICE.

I FURTHER CERTIFY THAT COPIES OF ANY TRANSACTIONAL DOCUMENTS ATTACHED TO THIS FORM AS REQUIRED BY PARAGRAPHS 1, 2 AND 3, IMMEDIATELY ABOVE, ARE TRUE AND ACCURATE COPIES OF THE ORIGINAL DOCUMENTS. I FURTHER CERTIFY THAT THE ORIGINAL DOCUMENTS ARE IN MOVANT'S POSSESSION, EXCEPT AS FOLLOWS:

_____.

## DECLARATION

I,  Jasmine Heredia, Bankruptcy Case Manager
<NAME AND TITLE> OF
NEWREZ, LLC DBA SHELLPOINT MORTGAGE SERVICING AS SERVICER FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS DELAWARE TRUSTEE FOR STONE ROOTS M TRUST,
<NAME OF MOVANT>, HEREBY DECLARE (OR CERTIFY, VERIFY, OR STATE) PURSUANT TO 28 U.S.C. SECTION 1746 UNDER PENALTY OF PERJURY THAT THE FOREGOING IS TRUE AND CORRECT BASED ON PERSONAL KNOWLEDGE OF THE MOVANT'S BOOKS AND BUSINESS RECORDS.


EXECUTED AT San Diego_____ <CITY/TOWN>,  CA_____ <STATE> ON THIS 18___ DAY OF  June_____ <MONTH), 2025 <YEAR>.

_____

NAME:  Jasmine Heredia
TITLE:  Bankruptcy Case Manager
MOVANT: NEWREZ LLC DBA SHELLPOINT MORTGAGE SERVICING AS SERVICER FOR U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS DELAWARE TRUSTEE FOR STONE ROOTS M TRUST
STREET ADDRESS: PO BOX 650840
CITY, STATE AND ZIP CODE: DALLAS, TX 75265-0840

## SECURED NOTE

## NOTICE TO BORROWER: THIS DOCUMENT CONTAINS PROVISIONS FOR A VARIABLE INTEREST RATE

**$148,000.00**

Date: March 23, 2023
Cook County, Illinois

*Property Address:*          *4150 Eierman Ave, Baltimore, Maryland 21206*

FOR VALUE RECEIVED, the undersigned, Levy Ventures L.L.C., a Maryland limited liability company ("Borrower"), whose address is 368 New Hempstead Rd, Ste 244, New City, New York 10956, hereby promises to pay to BPL Mortgage Trust, LLC, a Delaware limited liability company, or order ("Lender"), whose address is 1801 S. Meyers Road, Suite 400, Oakbrook Terrace, Illinois 60181, the principal sum of One Hundred Forty-Eight Thousand and 00/100 Dollars ($148,000.00), together with interest on the unpaid principal balance of this Note, as follows:

1.      **Interest.** Interest on the unpaid principal balance, including any Lender Retained Funds, will accrue from the date the proceeds have been distributed to or on behalf of the Borrower (the "Date of Advance") at an annual rate equal to Eight and 375/1000 Percent (8.375%) for the first one hundred twenty (120) months ("Initial Interest Rate"). The Initial Interest Rate will change as provided for herein.

1.1.    **Computation of Interest.** Interest on this Note is computed on a 30/360 basis; that is, with the exception of odd days before the first full payment cycle, monthly interest is calculated by applying the ratio of the interest rate over a year of 360 days, multiplied by the outstanding principal balance, multiplied by a month of 30 days.  Interest for the odd days before the first full month and any partial month in which the loan is repaid in full is calculated on the basis of the actual days and a 360-day year and shall include the day of payoff. All interest payable under this Note is computed using this method.

1.2.    **Interest Rate Changes.**  The Initial Interest Rate may change on April 1, 2033, and may change on the 1st day of the month every twelve (12) months thereafter to correspond with changes in the Index rate. Each date on which the interest rate may change shall be referred to herein as a "Change Date."

1.3.    **Index.**  Commencing on the first Change Date, the interest rate will be based on an Index. "Index" shall mean the 30-day average Secured Overnight Financing Rate ("SOFR"), which is the compounded averages of the SOFR over rolling 30 calendar day periods, as published by the Federal Reserve Bank of New York.  Any interest rate change shall be effective at the beginning of the business day on which such change becomes effective.  The use of the term shall not constitute a representation of Lender as to a rate of interest that any borrower or class of borrower shall necessarily be entitled.  The most recent Index value available as of the date forty-five (45) days before each Change Date is called the "Current Index," provided that if the Current Index is less than zero, then the Current Index will be deemed to be zero for purposes of calculating the interest rate.

If the Index is no longer available, the Lender will choose a new index which is based upon comparable information and shall notify Borrower of this choice.

1.4.    **Calculation of Changes.**  Before each Change Date, Lender shall calculate the interest rate by adding Five and 00/100 Percent (5%) (the "Margin") to the Current Index.  Lender will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%).  Subject to the limits stated below, this rounded amount will be the new interest rate until the next Change Date.

1.5.    **Limits on Interest Rate.**

---

1

© 2007 G̶o̶s̶s̶o̶i̶ ̶L̶a̶w̶ ̶F̶i̶r̶m̶;̶ ̶A̶l̶l̶ ̶R̶i̶g̶h̶t̶s̶ Reserved.
Note

v171

EXHIBIT 2

      1.5.1.  **Initial Interest Rate Limitation.** The interest rate will not increase or decrease more than Two and 00/100 Percent (2%) from the Initial Interest Rate ("Initial Rate Cap").

      1.5.2.  **Subsequent Interest Rate Limitation.** For each subsequent Change Date, the interest rate shall not increase or decrease on any single Change Date by more than Two and 00/100 Percent (2%) ("Subsequent Rate Cap") from the previous rate.

      1.5.3.  **Minimum Interest Rate.** The interest rate will never be less than Eight and 375/1000 Percent (8.375%) ("Floor Rate").

      1.5.4.  **Maximum Interest Rate.** The interest rate will never be greater than Five and 00/100 Percent (5%) above the Initial Interest Rate ("Maximum Interest Rate").

  **1.6.**  **Effective Date of Changes.** The new interest rate will become effective on each Change Date and the new payment calculated using the new interest rate will become effective one month after each Change Date.

**2.**  **Payment Obligations.**

  **2.1.**  **In General.** Borrower will make a payment each month until the entire indebtedness evidenced by this Note and all accrued and unpaid principal, interest and other charges due hereunder have been paid in full. If Borrower still owes amounts under this Note on April 1, 2053 (the "Maturity Date"), Borrower will pay those amounts in full on that date. Payments due under the Note shall be made in U.S. currency. Lender may charge a non-sufficient funds fee, in Lender's discretion, for each payment that is returned unpaid by the Borrower's bank. This charge may be in addition to any other charges provided for herein. Further, if any check or other instrument received by Lender as payment under the Note or the Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under this Note and the Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; (d) Electronic Funds Transfer; or (e) wire. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

  **2.2.**  **Initial Interest-Only Payments.** Interest-only payments shall be due and payable in consecutive monthly installments commencing with the first payment due on May 1, 2023 and continuing on the first day of every month thereafter for a period of one hundred twenty (120) consecutive months.

  **2.3.**  **Payments of Principal and Interest.** Beginning on May 1, 2033 and on the first day of every month thereafter, Borrower will make monthly payments of principal and interest amortized over two hundred forty (240) months

  **2.4.**  **Change in Payment Calculations.** On each Change Date, Lender shall calculate the new interest rate and the adjusted monthly payment amount in accordance with this Note.

  **2.5.**  **Delivery of Payments.** Payments due under this Note shall be made to Lender by electronic funds transfer by automated clearing house payments ("ACH Payments"). Borrower shall at all times maintain a valid account to be used for ACH Payments and shall ensure sufficient funds in the account to cover the amount of each payment or debit entry. Borrower's failure to maintain a valid account to be used for ACH Payments or failure to deposit and/or maintain sufficient funds in the account for each debit entry, shall be a Default under this Note and the Loan Agreement. Lender reserves the right, in its sole and absolute discretion, to require payment in any other manner.

  **2.6.**  **Order of Application of Payments.** Each payment under this Note shall be credited in the following order: (a) costs, fees, charges, and advances paid or incurred by Lender or payable to Lender and interest under any provision of this Note, the Loan Agreement, or the Security Instrument, in such order as Lender, in its sole and absolute discretion, elects, (b) interest payable under the Note, and (c) principal under the Note.

  **2.7.**  **Other Terms.** This Note is subject to the following additional terms as provided for in the Loan Agreement. See headings in Loan Agreement sections for applicability.

      **2.7.1.**  **Impound Accounts.**

© 2007 Geraci Law Firm; All Rights Reserved.
Note

EXHIBIT 2

3.     **Late Charge.**  Borrower acknowledges that default in the payment of any sum due under this Note will result in losses and additional expenses to Lender in servicing the indebtedness evidenced by this Note, handling such delinquent payments, and meeting its other financial obligations.  Borrower further acknowledges that the extent of such loss and additional expenses is extremely difficult and impractical to ascertain.  Borrower acknowledges and agrees that, if any payment due under this Note is not received by Lender within ten (10) days when due, a charge of 10 cents ($0.10) for each dollar ($1.00) that is not paid when due would be a reasonable estimate of expenses so incurred (the "Late Charge").  Without prejudicing or affecting any other rights or remedies of Lender, Borrower shall pay the Late Charge to Lender as liquidated damages to cover expenses incurred in handling such delinquent payment.

4.     **Default.**  On (a) Borrower's failure to pay any installment or other sum due under this Note when due and payable (whether by extension, acceleration, or otherwise) , (b) an Event of Default (as defined in the Loan Agreement), or (c) any breach of any other promise or obligation in this Note or in any other instrument now or hereafter securing the indebtedness evidenced by this Note, then, and in any such event, Lender may, at its option, declare this Note (including, without limitation, all accrued interest) due and payable immediately regardless of the Maturity Date.  Borrower expressly waives notice of the exercise of this option.

5.     **Prepayment.**

5.1.    **Prepayment Premium.** Borrower may prepay this Note in whole or in part at any time without penalty.  However, if Borrower prepays this Note in whole or in part prior to the Maturity Date, Borrower shall pay a Prepayment Premium ("Prepayment Premium") equal to the following:

(a) If prepayment is made on or before one year from the Date of Advance, Borrower shall pay a fee equal to 5.00% of the amount prepaid.

(b) If prepayment is made after one year from the Date of Advance, and on or before two years from the Date of Advance, Borrower shall pay a fee equal to 4.00% of the amount prepaid.

(c) If prepayment is made after two years from the Date of Advance, and on or before three years from the Date of Advance, Borrower shall pay a fee equal to 3.00% of the amount prepaid.

(d) If prepayment is made after three years from the Date of Advance, and on or before four years from the Date of Advance, Borrower shall pay a fee equal to 2.00% of the amount prepaid.

(e) If prepayment is made after four years from the Date of Advance, and on or before five years from the Date of Advance, Borrower shall pay a fee equal to 1.00% of the amount prepaid.

After five years from the Date of Advance, Borrower may prepay this Note in whole or in part at any time without paying any premium.  All prepayments of principal on this Note shall be applied to the most remote principal installment or installments then unpaid.

5.2.    **Ability to Pay Prepayment.**  Borrower shall have no right to prepay and Lender shall have no duty to accept full or partial prepayment of this Note without Borrower giving Lender thirty (30) days prior written notice of his, her or its intention to prepay this Note.  Said notice shall include the amount Borrower intends to repay.  Borrower shall pay Lender the principal due under this Note together with (a) any prepayment premium contemplated in this Note and (b) any accrued but yet unpaid interest and fees.

5.3.    **Prepayment Waivers.**  BORROWER ACKNOWLEDGES AND AGREES THAT BORROWER HAS NO RIGHT TO PREPAY THIS NOTE EXCEPT AS PROVIDED IN THIS SECTION. BORROWER FURTHER ACKNOWLEDGES AND AGREES THAT IF THE MATURITY DATE IS ACCELERATED BY LENDER PURSUANT TO THE LOAN DOCUMENTS (INCLUDING,

© 2007 Geraci Law Firm; All Rights Reserved.                                                              v171
Note

EXHIBIT 2

WITHOUT LIMITATION, A JUNIOR LIEN LENDER OF THE PROPERTY), AND BORROWER OR ANY THIRD PERSON THEREAFTER SEEKS TO PAY OFF SUCH ACCELERATED INDEBTEDNESS OR PURCHASE THE PROPERTY AT A FORECLOSURE SALE (WHETHER JUDICIAL OR NON-JUDICIAL), SUCH PAYOFF OR PURCHASE SHALL CONSTITUTE A PREPAYMENT HEREUNDER AND THE PREPAYMENT PREMIUM SET FORTH ABOVE SHALL BE DUE IN THE EVENT PREPAYMENT OCCURS. BY INITIALING BELOW, BORROWER SPECIFICALLY ACKNOWLEDGES AND AGREES THAT BORROWER SHALL PAY THE PREPAYMENT PREMIUM, EVEN IN THE CASE WHERE LENDER HAS ACCELERATED THE MATURITY DATE PURSUANT TO THE LOAN DOCUMENTS; THAT THE CALCULATION OF THE PREPAYMENT PREMIUM IS FAIR AND REASONABLE TO COMPENSATE LENDER FOR THE LOSS WHICH LENDER MAY INCUR AS A RESULT OF PREPAYMENT OF THIS NOTE; THAT BORROWER WAIVES ANY RIGHT BORROWER MAY HAVE OR CLAIM TO HAVE UNDER ILLINOIS LAW; AND THAT LENDER HAS MADE THE LOAN EVIDENCED BY THIS NOTE IN RELIANCE ON THE AGREEMENTS AND WAIVERS OF BORROWER IN THIS SECTION AND LENDER WOULD NOT HAVE MADE THE LOAN WITHOUT SUCH AGREEMENTS AND WAIVERS.

BORROWER'S INITIALS:

**6.** **Interest on Default.** If Borrower is in default under the Loan Documents, then at the sole and absolute discretion of Lender and without notice or opportunity to cure, the entire unpaid principal balance shall immediately bear an annual interest rate equal to the lesser of (a) Twelve and 5625/1000 Percent (12.5625%); or (b) the maximum interest rate allowed by law (the "Default Rate"). The Loan shall accrue interest at the Default Rate only until all defaults are cured and the Loan is reinstated. Borrower acknowledges, understands and agrees that in connection with any default: (i) Lender's risk of nonpayment of the Loan will be materially increased; (ii) Lender's ability to meet its other obligations and to take advantage of other investment opportunities will be adversely impacted; (iii) Lender may need to set aside funds in a loan loss reserve, repurchase the loan from a credit provider or otherwise impair their capital; (iv) Lender may be unable to raise additional funds from investors, credit facilities or other capital sources due to defaults in its portfolio; (v) the value of the Lender's loan will materially decrease and may become unmarketable altogether; (vi) the value of Lender's business enterprise will be reduced; (vii) Lender will incur additional costs and expenses arising from its loss of the use of the amounts due; (viii) the aforementioned list of risks, losses and damages is not exhaustive and Lender will suffer additional exposure to risk, losses and damages not specifically identified above; (ix) it is extremely difficult and impractical to determine such additional costs and expenses; (x) Lender is entitled to be compensated for such additional risks, costs, and expenses; and (xi) the increase to the Default Rate represents a fair and reasonable estimate of the additional risks, costs, and expenses Lender will incur by reason of Borrower's default and the additional compensation Lender is entitled to receive for the harms incurred by Lender due to Borrower's default. Interest at the Default Rate shall be payable by Borrower without prejudice to the rights of Lender to collect any other amounts to be paid under this Note (including, without limitation, late charges), the Loan Agreement, or the Security Instrument.

**7.** **Interest on Interest.** If any interest payment under this Note is not paid when due, the unpaid interest shall be added to the principal of this Note, shall become and be treated as principal, and shall thereafter bear like interest.

**8.** **Due-on-Sale.** If Borrower (a) sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance as defined in the Security Instrument), transfers possession, or alienates all or any portion of the Property, or any of Borrower's

---

4

© 2007 Geraci Law Firm: All Rights Reserved.
Note

v171

EXHIBIT 2

interest in the Property, or suffers its title to, or any interest in, the Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Property; or (b) if title to such Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, or (c) if a junior voluntary or involuntary deed of trust or mortgage lien in favor of another lender encumbers the Mortgaged Property (other than a Permitted Encumbrance) without Lender's express prior written consent thereto, which consent may be withheld in Lender's absolute and sole discretion, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by the Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

9.      **Waiver.** Borrower, endorsers, and all other persons liable or to become liable on this Note waive diligence, presentment, protest and demand, and also notice of protest, demand, nonpayment, dishonor and maturity and consents to any extension of the time or terms of payment hereof, any and all renewals or extensions of the terms hereof, any release of all or any part of the security given for this Note, any acceptance of additional security of any kind and any release of any party liable under this Note. Any such renewals or extensions may be made without notice to Borrower.

10.     **Notice.** Any notice required to be provided in this Note shall be given in accordance with the notice requirements provided in the Loan Agreement.

11.     **Assignment.** This Note is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Note. The terms of this Note shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Note cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Note, and may sell or assign participations or other interests in all or any part of this Note, all without notice to or the consent of Borrower.

12.     **Usury.** All agreements between Borrower and Lender are expressly limited, so that in no event or contingency, whether because of the advancement of the proceeds of this Note, acceleration of maturity of the unpaid principal balance, or otherwise, shall the amount paid or agreed to be paid to Lender for the use, forbearance, or retention of the money to be advanced under this Note exceed the highest lawful rate permissible under applicable usury laws. If, under any circumstances, fulfillment of any provision of this Note, or the Loan Documents, after timely performance of such provision is due, shall involve exceeding the limit of validity prescribed by law that a court of competent jurisdiction deems applicable, then, ipso facto, the obligations to be fulfilled shall be reduced to the limit of such validity. If, under any circumstances, Lender shall ever receive as interest an amount that exceeds the highest lawful rate, the amount that would be excessive interest shall be applied to reduce the unpaid principal balance under this Note and not to pay interest, or, if such excessive interest exceeds the unpaid principal balance under this Note, such excess shall be refunded to Borrower. This provision shall control every other provision of all agreements between Borrower and Lender.

13.     **Capitalized Terms.** Capitalized terms used but not defined herein shall have the meaning ascribed to such term in the Loan Documents (as defined in the Loan Agreement).

14.     **Loan Agreement.** This Note is also secured by and is subject to the provisions of that certain Loan and Security Agreement of even date herewith (the "Loan Agreement") between Borrower and Lender, and all Collateral referenced and incorporated in the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Note, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

**THIS AGREEMENT MAY BE EXECUTED IN COUNTER-PARTS.**

© 2007 Geraci Law Firm; All Rights Reserved.                                                v171
Note

EXHIBIT 2

[SIGNATURES FOLLOW]

© 2007 Geraci Law Firm; All Rights Reserved.
Note

EXHIBIT 2

**BORROWER:**

**LEVY VENTURES L.L.C., A MARYLAND LIMITED LIABILITY COMPANY**

By: _____

    Eluzer Gold, Sole Member

© 2007 Geraci Law Firm; All Rights Reserved.         v171
Note

EXHIBIT 2

# ALLONGE TO NOTE

LOAN NUMBER: ███

DATE OF NOTE: 03/23/2023

MORTGAGOR(S): Levy Ventures L.L.C.

PROPERTY ADDRESS: 4150 Eierman Ave,
            Baltimore, MD 21206

LOAN AMOUNT: $148,000.00

PAY TO THE ORDER OF:

WITHOUT RECOURSE

BPL Mortgage Trust, LLC, a Delaware Limited Liability Corporation

By: _____

Name:  Anthony Norton
Title:    Vice President

EXHIBIT 2

**BOOK: 25783  PAGE: 12**

Baltimore City Circuit Court
IMP FD SURE          $40.00
RECORDING FEE        $75.00

TOTAL                $115.00
XAC  JW
Apr 14, 2023      08:48 am

City of Baltimore, Maryland
Recordation Tax Exempt
Director of Finance
04-13-2023 AT

**WHEN RECORDED, RETURN TO**:

BPL Mortgage Trust, LLC
1801 S. Meyers Road, Suite 400
Oakbrook Terrace, Illinois 60181

Property ID No.: 27-01-5898H-066

## Purchase Money
## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**Note Amount:**       **$148,000.00**
**Property Address:**  **4150 Eierman Ave, Baltimore, Maryland 21206**

### THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE MARYLAND UNIFORM COMMERCIAL CODE.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument" or "Deed of Trust") is made as of March 23, 2023, among Levy Ventures L.L.C., a Maryland limited liability company ("Borrower"), whose address is 368 New Hempstead Rd, Ste 244, New City, New York 10956; Geraci Law LLC , as trustee ("Trustee"); and BPL Mortgage Trust, LLC, a Delaware limited liability company, as beneficiary ("Lender"), whose address is 1801 S. Meyers Road, Suite 400, Oakbrook Terrace, Illinois 60181.

### TRANSFER OF RIGHTS IN THE PROPERTY

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations (as defined in this Security Instrument), Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the state where the Mortgaged Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Security Instrument, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures,

1

© 2007 Geraci Law Firm, All Rights Reserved.                                                   v171
Deed of Trust | Loan N

EXHIBIT 3

**WHEN RECORDED, RETURN TO**:

BPL Mortgage Trust, LLC
1801 S. Meyers Road, Suite 400
Oakbrook Terrace, Illinois 60181

███████████

Property ID No.: 27-01-5898H-066

*Purchase Money*
## DEED OF TRUST, ASSIGNMENT OF LEASES AND RENTS, FIXTURE FILING, AND SECURITY AGREEMENT

**Note Amount:**        **$148,000.00**
**Property Address:**    **4150 Eierman Ave, Baltimore, Maryland 21206**

### THIS DOCUMENT CONSTITUTES A FIXTURE FILING IN ACCORDANCE WITH THE MARYLAND UNIFORM COMMERCIAL CODE.

This Deed of Trust, Assignment of Leases and Rents, Fixture Filing, and Security Agreement (the "Security Instrument" or "Deed of Trust") is made as of March 23, 2023, among Levy Ventures L.L.C., a Maryland limited liability company ("Borrower"), whose address is 368 New Hempstead Rd, Ste 244, New City, New York 10956; Geraci Law LLC , as trustee ("Trustee"); and BPL Mortgage Trust, LLC, a Delaware limited liability company, as beneficiary ("Lender"), whose address is 1801 S. Meyers Road, Suite 400, Oakbrook Terrace, Illinois 60181.

**TRANSFER OF RIGHTS IN THE PROPERTY**

To secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations (as defined in this Security Instrument), Borrower GRANTS, BARGAINS, SELLS, AND CONVEYS to Trustee the Mortgaged Property, with power of sale and right of entry, subject only to the Permitted Encumbrances, to have and to hold the Mortgaged Property to Trustee, its successors in trust, and the Trustee's assigns forever, and Borrower does hereby bind itself, its successors, and its assigns to warrant and forever defend the title to the Mortgaged Property to Trustee against anyone lawfully claiming it or any part of it; provided, however, that if the Indebtedness is paid in full as and when it becomes due and payable and the Obligations are performed on or before the date they are to be performed and discharged, then the liens, security interests, estates, and rights granted by the Loan Documents shall terminate; otherwise, they shall remain in full force and effect. As additional security for the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations, Borrower grants to Lender a security interest in the Personalty, Fixtures, Leases, and Rents under Article Nine of the Uniform Commercial Code in effect in the state where the Mortgaged Property is located. Borrower further grants, bargains, conveys, assigns, transfers, and sets over to Trustee, acting as both a trustee and an agent for Lender under this Security Instrument, a security interest in and to all of Borrower's right, title, and interest in, to, and under the Personalty, Fixtures,

1

© 2007 Geraci Law Firm. All Rights Reserved.                                v171
Deed of Trust | Loan ██████████

EXHIBIT 3

Leases, Rents, and Mortgaged Property (to the extent characterized as personal property) to secure the full and timely payment of the Indebtedness and the full and timely performance and discharge of the Obligations.

Borrower agrees to execute and deliver, from time to time, such further instruments, including, but not limited to, security agreements, assignments, and UCC financing statements, as may be requested by Lender to confirm the lien of this Security Instrument on any of the Mortgaged Property. Borrower further irrevocably grants, transfers, and assigns to Lender the Rents. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property.

TO MAINTAIN AND PROTECT THE SECURITY OF THIS SECURITY INSTRUMENT, TO SECURE THE FULL AND TIMELY PERFORMANCE BY BORROWER OF EACH AND EVERY OBLIGATION, COVENANT, AND AGREEMENT OF BORROWER UNDER THE LOAN DOCUMENTS, AND AS ADDITIONAL CONSIDERATION FOR THE INDEBTEDNESS AND OBLIGATIONS EVIDENCED BY THE LOAN DOCUMENTS, BORROWER HEREBY COVENANTS, REPRESENTS, AND AGREES AS FOLLOWS:

## DEFINITIONS.

**1.     Definitions.** For purposes of this Security Instrument, each of the following terms shall have the following respective meanings:

**1.1     "Attorneys' Fees."** Any and all attorney fees (including the allocated cost of in-house counsel), paralegal, and law clerk fees, including, without limitation, fees for advice, negotiation, consultation, arbitration, and litigation at the pretrial, trial, and appellate levels, and in any bankruptcy proceedings, and attorney costs and expenses incurred or paid by Lender in protecting its interests in the Mortgaged Property, including, but not limited to, any action for waste, and enforcing its rights under this Security Instrument.

**1.2     "Borrower."**

1.2.1.   The named Borrower in this Security Instrument;

1.2.2.   The obligor under the Note, whether or not named as Borrower in this Security Instrument; and

1.2.3.   Subject to any limitations of assignment as provided for in the Loan Documents, the heirs, legatees, devisees, administrators, executors, successors in interest to the Mortgaged Property, and the assigns of any such Person.

All references to Borrower in the remainder of the Loan Documents shall mean the obligor under the Note.

**1.3     "Event of Default."** An Event of Default as defined in the Loan Agreement.

**1.4     "Fixtures."** All right, title, and interest of Borrower in and to all materials, supplies, equipment, apparatus, and other items now or later attached to, installed on or in the Land or the Improvements, or that in some fashion are deemed to be fixtures to the Land or Improvements under the laws of the state where the Mortgaged Property is located, including the Uniform Commercial Code. "Fixtures" includes, without limitation, all items of Personalty to the extent that they may be deemed Fixtures under Governmental Requirements.

**1.5     "Governmental Authority."** Any and all courts, boards, agencies, commissions, offices, or authorities of any nature whatsoever for any governmental unit (federal, state, county, district, municipal, city, or otherwise) whether now or later in existence.

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan N██████                                              v171

EXHIBIT 3

**1.6** "**Governmental Requirements**." Any and all laws, statutes, codes, ordinances, regulations, enactments, decrees, judgments, and orders of any Governmental Authority.

**1.7** "**Impositions**." All real estate and personal property taxes, water, gas, sewer, electricity, and other utility rates and charges; charges imposed under any subdivision, planned unit development, or condominium declaration or restrictions; charges for any easement, license, or agreement maintained for the benefit of the Mortgaged Property, and all other taxes, charges, and assessments and any interest, costs, or penalties of any kind and nature that at any time before or after the execution of this Security Instrument may be assessed, levied, or imposed on the Mortgaged Property or on its ownership, use, occupancy, or enjoyment.

**1.8** "**Improvements**." Any and all buildings, structures, improvements, fixtures, and appurtenances now and later placed on the Mortgaged Property, including, without limitation, all apparatus and equipment, whether or not physically affixed to the land or any building, which is used to provide or supply air cooling, air conditioning, heat, gas, water, light, power, refrigeration, ventilation, laundry, drying, dish washing, garbage disposal, or other services; and all elevators, escalators, and related machinery and equipment, fire prevention and extinguishing apparatus, security and access control apparatus, partitions, ducts, compressors, plumbing, ovens, refrigerators, dishwashers, disposals, washers, dryers, awnings, storm windows, storm doors, screens, blinds, shades, curtains, curtain rods, mirrors, cabinets, paneling, rugs, attached floor coverings, furniture, pictures, antennas, pools, spas, pool and spa operation and maintenance equipment and apparatus, and trees and plants located on the Mortgaged Property, all of which, including replacements and additions, shall conclusively be deemed to be affixed to and be part of the Mortgaged Property conveyed to Trustee under this Security Instrument.

**1.9** "**Indebtedness**." The principal of, interest on, and all other amounts and payments due under or evidenced by the following:

    1.9.1. The Note (including, without limitation, the prepayment premium, late payment, and other charges payable under the Note);

    1.9.2. The Loan Agreement;

    1.9.3. This Security Instrument and all other Loan Documents;

    1.9.4. All funds later advanced by Lender to or for the benefit of Borrower under any provision of any of the Loan Documents;

    1.9.5. Any future loans or amounts advanced by Lender to Borrower when evidenced by a written instrument or document that specifically recites that the Obligations evidenced by such document are secured by the terms of this Security Instrument, including, but not limited to, funds advanced to protect the security or priority of the Security Instrument; and

    1.9.6. Any amendment, modification, extension, rearrangement, restatement, renewal, substitution, or replacement of any of the foregoing.

**1.10** "**Land**." The real estate or any interest in it described in Exhibit "A" attached to this Security Instrument and made a part of it, together with all Improvements and Fixtures and all rights, titles, and interests appurtenant to it.

**1.11** "**Leases**." Any and all leases, subleases, licenses, concessions, or other agreements (written or verbal, now or later in effect) that grant a possessory interest in and to, or the right to extract, mine, reside in, sell, or use the Mortgaged Property, and all other agreements, including, but not limited to, utility contracts, maintenance agreements, and service contracts that in any way relate to the use, occupancy, operation, maintenance, enjoyment, or ownership of the Mortgaged Property, except any and all leases, subleases, or other agreements under which Borrower is granted a possessory interest in the Land.

---

3

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan ██████

v171

EXHIBIT 3

**1.12** **"Lender."** The named Lender in this Security Instrument and the owner and holder (including a pledgee) of any Note, Indebtedness, or Obligations secured by this Security Instrument, whether or not named as Lender in this Security Instrument, and the heirs, legatees, devisees, administrators, executors, successors, and assigns of any such Person.

**1.13** **"Loan."** The extension of credit made by Lender to Borrower under the terms of the Loan Documents.

**1.14** **"Loan Agreement."** The Loan and Security Agreement given by Borrower evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments thereto.

**1.15** **"Loan Documents."** Collectively, this Security Instrument, the Note, and all other instruments and agreements required to be executed by Borrower or any guarantor in connection with the Loan.

**1.16** **"Mortgaged Property."** The Land, Improvements, Fixtures, Personalty, Leases, and Rents that is described as follows:

SEE EXHIBIT "A" ATTACHED HERETO AND MADE A PART HEREOF,

commonly known as:       **4150 Eierman Ave, Baltimore, Maryland 21206**
                         **Property ID No.: 27-01-5898H-066**

together with:

1.16.1. All right, title, and interest (including any claim or demand or demand in law or equity) that Borrower now has or may later acquire in or to such Mortgaged Property; all easements, rights, privileges, tenements, hereditaments, and appurtenances belonging or in any way appertaining to the Mortgaged Property; all of the estate, right, title, interest, claim, demand, reversion, or remainder of Borrower in or to the Mortgaged Property, either at law or in equity, in possession or expectancy, now or later acquired; all crops growing or to be grown on the Mortgaged Property; all development rights or credits and air rights; all water and water rights (whether or not appurtenant to the Mortgaged Property) and shares of stock pertaining to such water or water rights, ownership of which affects the Mortgaged Property; all minerals, oil, gas, and other hydrocarbon substances and rights thereto in, on, under, or upon the Mortgaged Property and all royalties and profits from any such rights or shares of stock; all right, title, and interest of Borrower in and to any streets, ways, alleys, strips, or gores of land adjoining the Land or any part of it that Borrower now owns or at any time later acquires and all adjacent lands within enclosures or occupied by buildings partly situated on the Mortgaged Property;

1.16.2. All intangible Mortgaged Property and rights relating to the Mortgaged Property or its operation or used in connection with it, including, without limitation, permits, licenses, plans, specifications, construction contracts, subcontracts, bids, deposits for utility services, installations, refunds due Borrower, trade names, trademarks, and service marks;

1.16.3. All of the right, title, and interest of Borrower in and to the land lying in the bed of any street, road, highway, or avenue in front of or adjoining the Land;

1.16.4. Any and all awards previously made or later to be made by any Governmental Authority to the present and all subsequent owners of the Mortgaged Property that may be made with respect to the Mortgaged Property as a result of the exercise of the right of eminent domain, the alteration of the grade of any street, or any other injury to or decrease of value of the Mortgaged Property, which

---

4

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan

v171

EXHIBIT 3

award or awards are assigned to Lender and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of any such award or awards from the authorities making them and to give proper receipts and acquittances for them;

1.16.5. All certificates of deposit of Borrower in Lender's possession and all bank accounts of Borrower with Lender and their proceeds, and all deposits of Borrower with any Governmental Authority and/or public utility company that relate to the ownership of the Mortgaged Property;

1.16.6. All Leases of the Mortgaged Property or any part of it now or later entered into and all right, title, and interest of Borrower under such Leases, including cash or securities deposited by the tenants to secure performance of their obligations under such Leases (whether such cash or securities are to be held until the expiration of the terms of such Leases or applied to one or more of the installments of rent coming due immediately before the expiration of such terms), all rights to all insurance proceeds and unearned insurance premiums arising from or relating to the Mortgaged Property, all other rights and easements of Borrower now or later existing pertaining to the use and enjoyment of the Mortgaged Property, and all right, title, and interest of Borrower in and to all declarations of covenants, conditions, and restrictions as may affect or otherwise relate to the Mortgaged Property;

1.16.7. Any and all proceeds of any insurance policies covering the Mortgaged Property, whether or not such insurance policies were required by Lender as a condition of making the Loan secured by this Security Instrument or are required to be maintained by Borrower as provided below in this Security Instrument; which proceeds are assigned to Lender, and Lender, at its option, is authorized, directed, and empowered to collect and receive the proceeds of such insurance policies from the insurers issuing the same and to give proper receipts and acquittances for such policies, and to apply the same as provided below;

1.16.8. If the Mortgaged Property includes a leasehold estate, all of Borrower's right, title, and interest in and to the lease, more particularly described in Exhibit "A" attached to this Security Instrument (the "Leasehold") including, without limitation, the right to surrender, terminate, cancel, waive, change, supplement, grant subleases of, alter, or amend the Leasehold;

1.16.9. All plans and specifications for the Improvements; all contracts and subcontracts relating to the Improvements; all deposits (including tenants' security deposits; provided, however, that if Lender acquires possession or control of tenants' security deposits Lender shall use the tenants' security deposits only for such purposes as Governmental Requirements permit), funds, accounts, contract rights, instruments, documents, general intangibles, and notes or chattel paper arising from or in connection with the Mortgaged Property; all permits, licenses, certificates, and other rights and privileges obtained in connection with the Mortgaged Property; all soils reports, engineering reports, land planning maps, drawings, construction contracts, notes, drafts, documents, engineering and architectural drawings, letters of credit, bonds, surety bonds, any other intangible rights relating to the Land and Improvements, surveys, and other reports, exhibits, or plans used or to be used in connection with the construction, planning, operation, or maintenance of the Land and Improvements and all amendments and modifications; all proceeds arising from or by virtue of the sale, lease, grant of option, or other disposition of all or any part of the Mortgaged Property (consent to same is not granted or implied); and all proceeds (including premium refunds) payable or to be payable under each insurance policy relating to the Mortgaged Property;

1.16.10. All trade names, trademarks, symbols, service marks, and goodwill associated with the Mortgaged Property and any and all state and federal applications and registrations now or later used in connection with the use or operation of the Mortgaged Property;

5

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loa███████

v171

EXHIBIT 3

1.16.11. All tax refunds, bills, notes, inventories, accounts and charges receivable, credits, claims, securities, and documents of all kinds, and all instruments, contract rights, general intangibles, bonds and deposits, and all proceeds and products of the Mortgaged Property;

1.16.12. All money or other personal property of Borrower (including, without limitation, any instrument, deposit account, general intangible, or chattel paper, as defined in the Uniform Commercial Code) previously or later delivered to, deposited with, or that otherwise comes into Lender's possession;

1.16.13. All accounts, contract rights, chattel paper, documents, instruments, books, records, claims against third parties, money, securities, drafts, notes, proceeds, and other items relating to the Mortgaged Property;

1.16.14. All construction, supply, engineering, and architectural contracts executed and to be executed by Borrower for the construction of the Improvements; and

1.16.15. All proceeds of any of the foregoing.

As used in this Security Instrument, "Mortgaged Property" is expressly defined as meaning all or, when the context permits or requires, any portion of it and all or, when the context permits or requires, any interest in it.

**1.17**    "**Note.**" The Secured Note payable by Borrower to the order of Lender in the principal amount of **One Hundred Forty-Eight Thousand and 00/100 Dollars ($148,000.00), which matures on April 1, 2053,** evidencing the Loan, in such form as is acceptable to Lender, together with any and all rearrangements, extensions, renewals, substitutions, replacements, modifications, restatements, and amendments to the Secured Note.

**1.18**    "**Obligations.**" Any and all of the covenants, warranties, representations, and other obligations (other than to repay the Indebtedness) made or undertaken by Borrower to Lender or Trustee as set forth in the Loan Documents; any lease, sublease, or other agreement under which Borrower is granted a possessory interest in the Land; each obligation, covenant, and agreement of Borrower in the Loan Documents or in any other document executed by Borrower in connection with the loan(s) secured by this Security Instrument whether set forth in or incorporated into the Loan Documents by reference; each and every monetary provision of all covenants, conditions, and restrictions, if any, pertaining to the Mortgaged Property and on Lender's written request, the enforcement by Borrower of any covenant by third parties to pay maintenance or other charges, if they have not been paid, or valid legal steps taken to enforce such payment within 90 days after such written request is made; if the Mortgaged Property consists of or includes a leasehold estate, each obligation, covenant, and agreement of Borrower arising under, or contained in, the instrument(s) creating any such leasehold; all agreements of Borrower to pay fees and charges to Lender whether or not set forth in this Security Instrument; and charges, as allowed by law, when they are made for any statement regarding the obligations secured by this Security Instrument.

The Obligations specifically exclude the Environmental Indemnity Agreement dated the date of this Security Instrument, executed by Borrower and any guarantor of the Loan, which is not secured by this Security Instrument.

**1.19**    "**Permitted Encumbrances.**" At any particular time, (a) liens for taxes, assessments, or governmental charges not then due and payable or not then delinquent; (b) liens, easements, encumbrances, and restrictions on the Mortgaged Property that are allowed by Lender to appear in Schedule B, with Parts I and II of an ALTA title policy to be issued to Lender following recordation of the Security Instrument; and (c) liens in favor of or consented to in writing by Lender.

**1.20**    "**Person.**" Natural persons, corporations, partnerships, unincorporated associations, joint ventures, and any other form of legal entity.

---

6

EXHIBIT 3

**1.21** "**Personalty.**" All of the right, title, and interest of Borrower in and to all tangible and intangible personal property, whether now owned or later acquired by Borrower, including, but not limited to, water rights (to the extent they may constitute personal property), all equipment, inventory, goods, consumer goods, accounts, chattel paper, instruments, money, general intangibles, letter-of-credit rights, deposit accounts, investment property, documents, minerals, crops, and timber (as those terms are defined in the Uniform Commercial Code) and that are now or at any later time located on, attached to, installed, placed, used on, in connection with, or are required for such attachment, installation, placement, or use on the Land, the Improvements, Fixtures, or on other goods located on the Land or Improvements, together with all additions, accessions, accessories, amendments, modifications to the Land or Improvements, extensions, renewals, and enlargements and proceeds of the Land or Improvements, substitutions for, and income and profits from, the Land or Improvements. The Personalty includes, but is not limited to, all goods, machinery, tools, equipment (including fire sprinklers and alarm systems); building materials, air conditioning, heating, refrigerating, electronic monitoring, entertainment, recreational, maintenance, extermination of vermin or insects, dust removal, refuse and garbage equipment; vehicle maintenance and repair equipment; office furniture (including tables, chairs, planters, desks, sofas, shelves, lockers, and cabinets); safes, furnishings, appliances (including ice-making machines, refrigerators, fans, water heaters, and incinerators); rugs, carpets, other floor coverings, draperies, drapery rods and brackets, awnings, window shades, venetian blinds, curtains, other window coverings; lamps, chandeliers, other lighting fixtures; office maintenance and other supplies; loan commitments, financing arrangements, bonds, construction contracts, leases, tenants' security deposits, licenses, permits, sales contracts, option contracts, lease contracts, insurance policies, proceeds from policies, plans, specifications, surveys, books, records, funds, bank deposits; and all other intangible personal property. Personalty also includes any other portion or items of the Mortgaged Property that constitute personal property under the Uniform Commercial Code.

**1.22** "**Rents.**" All rents, issues, revenues, income, proceeds, royalties, profits, license fees, prepaid municipal and utility fees, bonds, and other benefits to which Borrower or the record title owner of the Mortgaged Property may now or later be entitled from or which are derived from the Mortgaged Property, including, without limitation, sale proceeds of the Mortgaged Property; any room or space sales or rentals from the Mortgaged Property; and other benefits paid or payable for using, leasing, licensing, possessing, operating from or in, residing in, selling, mining, extracting, or otherwise enjoying or using the Mortgaged Property.

**1.23** "**Uniform Commercial Code.**" The uniform commercial code as found in the statutes of the state in which the Mortgaged Property is located.

**1.24** "**Water Rights.**" All water rights of whatever kind or character, surface or underground, appropriative, decreed, or vested, that are appurtenant to the Mortgaged Property or otherwise used or useful in connection with the intended development of the Mortgaged Property.

Any terms not otherwise defined in this Security Instrument shall have the meaning given them in the Loan Agreement and Note, dated of even date herewith between Borrower and Lender.

## UNIFORM COVENANTS

**2.**   **Repair and Maintenance of Mortgaged Property.**   Borrower shall (a) keep the Mortgaged Property in good condition and repair; (b) not substantially alter, remove, or demolish the Mortgaged Property or any of the Improvements except when incident to the replacement of Fixtures, equipment,

---

7

© 2007 Geraci Law Firm. All Rights Reserved.
Deed of Trust    v171

EXHIBIT 3

machinery, or appliances with items of like kind; (c) restore and repair to the equivalent of its original condition all or any part of the Mortgaged Property that may be damaged or destroyed, including, but not limited to, damage from termites and dry rot, soil subsidence, and construction defects, whether or not insurance proceeds are available to cover any part of the cost of such restoration and repair, and regardless of whether Lender permits the use of any insurance proceeds to be used for restoration under this Security Instrument; (d) pay when due all claims for labor performed and materials furnished in connection with the Mortgaged Property and not permit any mechanics' or materialman's lien to arise against the Mortgaged Property or furnish a loss or liability bond against such mechanics' or materialman's lien claims; (e) comply with all laws affecting the Mortgaged Property or requiring that any alterations, repairs, replacements, or improvements be made on it; (f) not commit or permit waste on or to the Mortgaged Property, or commit, suffer, or permit any act or violation of law to occur on it; (g) not abandon the Mortgaged Property; (h) cultivate, irrigate, fertilize, fumigate, and prune in accordance with prudent agricultural practices; (i) if required by Lender, provide for management satisfactory to Lender under a management contract approved by Lender; (j) notify Lender in writing of any condition at or on the Mortgaged Property that may have a significant and measurable effect on its market value; (k) if the Mortgaged Property is rental property, generally operate and maintain it in such manner as to realize its maximum rental potential; and (l) do all other things that the character or use of the Mortgaged Property may reasonably render necessary to maintain it in the same condition (reasonable wear and tear expected) as existed at the date of this Security Instrument.

3.      **Use of Mortgaged Property.**  Unless otherwise required by Governmental Requirements or unless Lender otherwise provides prior written consent, Borrower shall not change, nor allow changes in, the use of the Mortgaged Property from the current use of the Mortgaged Property as of the date of this Security Instrument.  Borrower shall not initiate or acquiesce in a change in the zoning classification of the Mortgaged Property without Lender's prior written consent.

4.      **Condemnation and Insurance Proceeds.**

      4.1     **Assignment to Lender.**  The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of or damage or injury to the Mortgaged Property, or any part of it, or for conveyance in lieu of condemnation, are assigned to and shall be paid to Lender, regardless of whether Lender's security is impaired.  All causes of action, whether accrued before or after the date of this Security Instrument, of all types for damages or injury to the Mortgaged Property or any part of it, or in connection with any transaction financed by funds lent to Borrower by Lender and secured by this Security Instrument, or in connection with or affecting the Mortgaged Property or any part of it, including, without limitation, causes of action arising in tort or contract or in equity, are assigned to Lender as additional security, and the proceeds shall be paid to Lender.  Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any such cause of action and may make any compromise or settlement of such action.  Borrower shall notify Lender in writing immediately on obtaining knowledge of any casualty damage to the Mortgaged Property or damage in any other manner in excess of $2,000.00 or knowledge of the institution of any proceeding relating to condemnation or other taking of or damage or injury to all or any portion of the Mortgaged Property.  Lender, in its sole and absolute discretion, may participate in any such proceedings and may join Borrower in adjusting any loss covered by insurance.  Borrower covenants and agrees with Lender, at Lender's request, to make, execute, and deliver, at Borrower's expense, any and all assignments and other instruments sufficient for the purpose of assigning the aforesaid award or awards, causes of action, or claims of damages or proceeds to Lender free, clear, and discharged of any and all encumbrances of any kind or nature.

8

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust

v171

EXHIBIT 3

**4.2**     **Insurance Payments.**  All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Lender may become entitled with respect to the Mortgaged Property if any damage or injury occurs to the Mortgaged Property, other than by a partial condemnation or other partial taking of the Mortgaged Property, shall be paid over to Lender and shall be applied first toward reimbursement of all costs and expenses of Lender in connection with their recovery and disbursement, and shall then be applied as follows:

4.2.1.   Lender shall consent to the application of such payments to the restoration of the Mortgaged Property so damaged only if Borrower has met all the following conditions (a breach of any one of which shall constitute a default under this Security Instrument, the Loan Agreement, the Note, and any other Loan Documents): (a) Borrower is not in default under any of the terms, covenants, and conditions of the Loan Documents; (b) all then-existing Leases affected in any way by such damage will continue in full force and effect; (c) Lender is satisfied that the insurance or award proceeds, plus any sums added by Borrower, shall be sufficient to fully restore and rebuild the Mortgaged Property under then current Governmental Requirements; (d) within 60 days after the damage to the Mortgaged Property, Borrower presents to Lender a restoration plan satisfactory to Lender and any local planning department, which includes cost estimates and schedules; (e) construction and completion of restoration and rebuilding of the Mortgaged Property shall be completed in accordance with plans and specifications and drawings submitted to Lender within 30 days after receipt by Lender of the restoration plan and thereafter approved by Lender, which plans, specifications, and drawings shall not be substantially modified, changed, or revised without Lender's prior written consent; (f) within 3 months after such damage, Borrower and a licensed contractor satisfactory to Lender enter into a fixed price or guaranteed maximum price contract satisfactory to Lender, providing for complete restoration in accordance with such restoration plan for an amount not to exceed the amount of funds held or to be held by Lender; (g) all restoration of the Improvements so damaged or destroyed shall be made with reasonable promptness and shall be of a value at least equal to the value of the Improvements so damaged or destroyed before such damage or destruction; (h) Lender reasonably determines that there is an identified source (whether from income from the Mortgaged Property, rental loss insurance, or another source) sufficient to pay all debt service and operating expenses of the Mortgaged Property during its restoration as required above; and (i) any and all funds that are made available for restoration and rebuilding under this Section shall be disbursed, at Lender's sole and absolute discretion to Lender, through Lender, the Trustee, or a title insurance or trust company satisfactory to Lender, in accordance with standard construction lending practices, including a reasonable fee payable to Lender from such funds and, if Lender requests, mechanics' lien waivers and title insurance date-downs, and the provision of payment and performance bonds by Borrower, or in any other manner approved by Lender in Lender's sole and absolute discretion; or

4.2.2.   If fewer than all conditions (a) through (i) above are satisfied, then such payments shall be applied in the sole and absolute discretion of Lender (a) to the payment or prepayment, with any applicable prepayment premium, of any Indebtedness secured by this Security Instrument in such order as Lender may determine, or (b) to the reimbursement of Borrower's expenses incurred in the rebuilding and restoration of the Mortgaged Property.  If Lender elects under this Section to make any funds available to restore the Mortgaged Property, then all of conditions (a) through (i) above shall apply, except for such conditions that Lender, in its sole and absolute discretion, may waive.

**4.3**     **Material Loss Not Covered.**  If any material part of the Mortgaged Property is damaged or destroyed and the loss, measured by the replacement cost of the Improvements according to then current Governmental Requirements, is not adequately covered by insurance proceeds collected or in the

9

© 2007 Geraci ▮▮▮▮▮▮▮▮▮▮ts Reserved.
Deed of Trust ▮▮▮▮▮

v171

EXHIBIT 3

process of collection, Borrower shall deposit with Lender, within 30 days after Lender's request, the amount of the loss not so covered.

**4.4**    **Total Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a total condemnation or other total taking of the Mortgaged Property shall be paid over to Lender and shall be applied first to reimbursement of all Lender's costs and expenses in connection with their recovery, and shall then be applied to the payment of any Indebtedness secured by this Security Instrument in such order as Lender may determine, until the Indebtedness secured by this Security Instrument has been paid and satisfied in full. Any surplus remaining after payment and satisfaction of the Indebtedness secured by this Security Instrument shall be paid to Borrower as its interest may then appear.

**4.5**    **Partial Condemnation Payments.** All compensation, awards, proceeds, damages, claims, insurance recoveries, rights of action, and payments ("Awarded Funds") that Borrower may receive or to which Borrower may become entitled with respect to the Mortgaged Property in the event of a partial condemnation or other partial taking of the Mortgaged Property, unless Borrower and Lender otherwise agree in writing, shall be divided into two portions, one equal to the principal balance of the Note at the time of receipt of such Awarded Funds and the other equal to the amount by which such Awarded Funds exceed the principal balance of the Note at the time of receipt of such Awarded Funds. The first such portion shall be applied to the sums secured by this Security Instrument, whether or not then due, including but not limited to principal, accrued interest, and advances, and in such order or combination as Lender may determine, with the balance of the funds paid to Borrower.

**4.6**    **Cure of Waiver of Default.** Any application of such Awarded Funds or any portion of it to any Indebtedness secured by this Security Instrument shall not be construed to cure or waive any default or notice of default under this Security Instrument or invalidate any act done under any such default or notice.

**5.**    **Taxes and Other Sums Due.** Borrower shall promptly pay, satisfy, and discharge: (a) all Impositions affecting the Mortgaged Property before they become delinquent; (b) such other amounts, chargeable against Borrower or the Mortgaged Property, as Lender reasonably deems necessary to protect and preserve the Mortgaged Property, this Security Instrument, or Lender's security for the performance of the Obligations; (c) all encumbrances, charges, and liens on the Mortgaged Property, with interest, which in Lender's judgment are, or appear to be, prior or superior to the lien of this Security Instrument or all costs necessary to obtain protection against such lien or charge by title insurance endorsement or surety company bond; (d) such other charges as Lender deems reasonable for services rendered by Lender at Borrower's request; and (e) all costs, fees, and expenses incurred by Lender in connection with this Security Instrument, whether or not specified in this Security Instrument.

On Lender's request, Borrower shall promptly furnish Lender with all notices of sums due for any amounts specified in the preceding clauses 5(a) through (e), and, on payment, with written evidence of such payment. If Borrower fails to promptly make any payment required under this Section, Lender may (but is not obligated to) make such payment. Borrower shall notify Lender immediately on receipt by Borrower of notice of any increase in the assessed value of the Mortgaged Property and agrees that Lender, in Borrower's name, may (but is not obligated to) contest by appropriate proceedings such increase in assessment. Without Lender's prior written consent, Borrower shall not allow any lien inferior to the lien of this Security Instrument to be perfected against the Mortgaged Property and shall not permit any improvement bond for any unpaid special assessment to issue.

---

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan

v171

EXHIBIT 3

**6.**    **Leases of Mortgaged Property by Borrower.**    At Lender's request, Borrower shall furnish Lender with executed copies of all Leases of the Mortgaged Property or any portion of it then in force. If Lender so requires, all Leases later entered into by Borrower are subject to Lender's prior review and approval and must be acceptable to Lender in form and content. Each Lease must specifically provide, inter alia, that (a) it is subordinate to the lien of this Security Instrument; (b) the tenant attorns to Lender (and Borrower consents to any such attornment), such attornment to be effective on Lender's acquisition of title to the Mortgaged Property; (c) the tenant agrees to execute such further evidence of attornment as Lender may from time to time request; (d) the tenant's attornment shall not be terminated by foreclosure; and (e) Lender, at Lender's option, may accept or reject such attornment. If Borrower learns that any tenant proposes to do, or is doing, any act that may give rise to any right of setoff against Rent, Borrower shall immediately (i) take measures reasonably calculated to prevent the accrual of any such right of setoff; (ii) notify Lender of all measures so taken and of the amount of any setoff claimed by any such tenant; and (iii) within 10 days after the accrual of any right of setoff against Rent, reimburse any tenant who has acquired such right, in full, or take other measures that will effectively discharge such setoff and ensure that rents subsequently due shall continue to be payable without claim of setoff or deduction.

At Lender's request, Borrower shall assign to Lender, by written instrument satisfactory to Lender, all Leases of the Mortgaged Property, and all security deposits made by tenants in connection with such Leases. On assignment to Lender of any such Lease, Lender shall succeed to all rights and powers of Borrower with respect to such Lease, and Lender, in Lender's sole and absolute discretion, shall have the right to modify, extend, or terminate such Lease and to execute other further leases with respect to the Mortgaged Property that is the subject of such assigned Lease.

Neither Borrower, tenant nor any other occupant of the Mortgaged Property shall use the Mortgaged Property, except in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations; nor shall Borrower, tenant or any other occupant cause the Mortgaged Property to become subject to any use that is not in compliance with all applicable federal, state, and local laws, ordinances, rules and regulations.

If Borrower suspects any tenant or other occupant of the Mortgaged Property is using the Mortgaged Property in a manner that is not in compliance with any Governmental Requirement to which Borrower, tenant, or any other occupant of the Mortgaged Property is subject, Borrower shall immediately take appropriate action to remedy the violation, and shall notify Lender of any potential violation within one (1) day of discovery of any such potential violation. Any potential violation by a tenant or any other occupant of the Mortgaged Property of any Governmental Requirement is an Event of Default under the terms of the Loan Agreement, the Note and this Security Instrument; and upon the occurrence of any such violation, Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**7.**    **Right to Collect and Receive Rents.**    Despite any other provision of this Security Instrument, Lender grants permission to Borrower to collect and retain the Rents of the Mortgaged Property as they become due and payable; however, such permission to Borrower shall be automatically revoked on default by Borrower in payment of any Indebtedness secured by this Security Instrument or in the performance of any of the Obligations, and Lender shall have the rights set forth in the laws and regulations where the Mortgaged Property is located regardless of whether declaration of default has been delivered, and without regard to the adequacy of the security for the Indebtedness secured by this Security Instrument. Failure of or discontinuance by Lender at any time, or from time to time, to collect any such Rents shall not in any manner affect the subsequent enforcement by Lender at any time, or from time to

---

11

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan

v171

EXHIBIT 3

time, of the right, power, and authority to collect these Rents. The receipt and application by Lender of all such Rents under this Security Instrument, after execution and delivery of declaration of default and demand for sale as provided in this Security Instrument or during the pendency of trustee's sale proceedings under this Security Instrument or judicial foreclosure, shall neither cure such breach or default nor affect such sale proceedings, or any sale made under them, but such Rents, less all costs of operation, maintenance, collection, and Attorneys' Fees, when received by Lender, may be applied in reduction of the entire Indebtedness from time to time secured by this Security Instrument, in such order as Lender may decide. Nothing in this Security Instrument, nor the exercise of Lender's right to collect, nor an assumption by Lender of any tenancy, lease, or option, nor an assumption of liability under, nor a subordination of the lien or charge of this Security Instrument to, any such tenancy, lease, or option, shall be, or be construed to be, an affirmation by Lender of any tenancy, lease, or option.

If the Rents of the Mortgaged Property are not sufficient to meet the costs, if any, of taking control of and managing the Mortgaged Property and collecting the Rents, any funds expended by Lender for such purposes shall become an Indebtedness of Borrower to Lender secured by this Security Instrument. Unless Lender and Borrower agree in writing to other terms of payment, such amounts shall be payable on notice from Lender to Borrower requesting such payment and shall bear interest from the date of disbursement at the rate stated in the Note unless payment of interest at such rate would be contrary to Governmental Requirements, in which event the amounts shall bear interest at the highest rate that may be collected from Borrower under Governmental Requirements.

Borrower expressly understands and agrees that Lender will have no liability to Borrower or any other person for Lender's failure or inability to collect Rents from the Mortgaged Property or for failing to collect such Rents in an amount that is equal to the fair market rental value of the Mortgaged Property. Borrower understands and agrees that neither the assignment of Rents to Lender nor the exercise by Lender of any of its rights or remedies under this Security Instrument shall be deemed to make Lender a "mortgagee-in-possession" or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it, unless and until Lender, in person or by agent, assumes actual possession of it. Nor shall appointment of a receiver for the Mortgaged Property by any court at the request of Lender or by agreement with Borrower, or the entering into possession of the Mortgaged Property or any part of it by such receiver be deemed to make Lender a mortgagee-in-possession or otherwise responsible or liable in any manner with respect to the Mortgaged Property or the use, occupancy, enjoyment, or operation of all or any portion of it.

During an Event of Default, any and all Rents collected or received by Borrower shall be accepted and held for Lender in trust and shall not be commingled with Borrower's funds and property, but shall be promptly paid over to Lender.

**8.**    **Assignment of Causes of Action, Awards, and Damages.**  All causes of action, and all sums due or payable to Borrower for injury or damage to the Mortgaged Property, or as damages incurred in connection with the transactions in which the Loan secured by this Security Instrument was made, including, without limitation, causes of action and damages for breach of contract, fraud, concealment, construction defects, or other torts, or compensation for any conveyance in lieu of condemnation, are assigned to Lender, and all proceeds from such causes of action and all such sums shall be paid to Lender for credit against the Indebtedness secured by this Security Instrument. Borrower shall notify Lender immediately on receipt by Borrower of notice that any such sums have become due or payable and, immediately on receipt of any such sums, shall promptly remit such sums to Lender.

After deducting all expenses, including Attorneys' Fees, incurred by Lender in recovering or collecting any sums under this Section, Lender may apply or release the balance of any funds received by

12

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | L█

v171

EXHIBIT 3

it under this Section, or any part of such balance, as it elects. Lender, at its option, may appear in and prosecute in its own name any action or proceeding to enforce any cause of action assigned to it under this Section and may make any compromise or settlement in such action whatsoever. Borrower covenants that it shall execute and deliver to Lender such further assignments of any such compensation awards, damages, or causes of action as Lender may request from time to time. If Lender fails or does not elect to prosecute any such action or proceeding and Borrower elects to do so, Borrower may conduct the action or proceeding at its own expense and risk.

**9.    Defense of Security Instrument; Litigation.**  Borrower represents and warrants that this Security Instrument creates a first position lien and security interest against the Mortgaged Property. Borrower shall give Lender immediate written notice of any action or proceeding (including, without limitation, any judicial, whether civil, criminal, or probate, or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender under the Loan Documents. Despite any other provision of this Security Instrument, Borrower agrees that Lender or Trustee may (but is not obligated to) commence, appear in, prosecute, defend, compromise, and settle, in Lender's or Borrower's name, and as attorney-in-fact for Borrower, and incur necessary costs and expenses, including Attorneys' Fees in so doing, any action or proceeding, whether a civil, criminal, or probate judicial matter, nonjudicial proceeding, arbitration, or other alternative dispute resolution procedure, reasonably necessary to preserve or protect, or affecting or purporting to affect, the Mortgaged Property, this Security Instrument, Lender's security for performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, and that if Lender and Trustee elect not to do so, Borrower shall commence, appear in, prosecute, and defend any such action or proceeding. Borrower shall pay all costs and expenses of Lender and Trustee, including costs of evidence of title and Attorneys' Fees, in any such action or proceeding in which Lender or Trustee may appear or for which legal counsel is sought, whether by virtue of being made a party defendant or otherwise, and whether or not the interest of Lender or Trustee in the Mortgaged Property is directly questioned in such action or proceeding, including, without limitation, any action for the condemnation or partition of all or any portion of the Mortgaged Property and any action brought by Lender to foreclose this Security Instrument or to enforce any of its terms or provisions.

**10.    Borrower's Failure to Comply With Security Instrument.**  If Borrower fails to make any payment or do any act required by this Security Instrument, or if there is any action or proceeding (including, without limitation, any judicial or nonjudicial proceeding to foreclose the lien of a junior or senior mortgage or deed of trust) affecting or purporting to affect the Mortgaged Property, this Security Instrument, Lender's security for the performance of the Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Agreement, the Note or this Security Instrument, Lender or Trustee may (but is not obligated to) (a) make any such payment or do any such act in such manner and to such extent as either deems necessary to preserve or protect the Mortgaged Property, this Security Instrument, or Lender's security for the performance of Borrower's Obligations and payment of the Indebtedness, or the rights or powers of Lender or Trustee under the Loan Documents, Lender and Trustee being authorized to enter on the Mortgaged Property for any such purpose; and (b) in exercising any such power, pay necessary expenses, retain attorneys, and pay Attorneys' Fees incurred in connection with such action, without notice to or demand on Borrower and without releasing Borrower from any Obligations or Indebtedness.

---

13

© 2007 Geraci Law ▮▮▮▮▮▮ Reserved.
Deed of Trust | Loan

v171

EXHIBIT 3

**11.**     **Sums Advanced to Bear Interest and to Be Secured by Security Instrument.** At Lender's request, Borrower shall immediately pay any sums advanced or paid by Lender or Trustee under any provision of this Security Instrument or the other Loan Documents. Until so repaid, all such sums and all other sums payable to Lender and Trustee shall be added to, and become a part of, the Indebtedness secured by this Security Instrument and bear interest from the date of advancement or payment by Lender or Trustee at the Default Rate provided in the Note, regardless of whether an Event of Default has occurred, unless payment of interest at such rate would be contrary to Governmental Requirements. All sums advanced by Lender under this Security Instrument or the other Loan Documents, shall have the same priority to which the Security Instrument otherwise would be entitled as of the date this Security Instrument is executed and recorded, without regard to the fact that any such future advances may occur after this Security Instrument is executed, and shall conclusively be deemed to be mandatory advances required to preserve and protect this Security Instrument and Lender's security for the performance of the Obligations and payment of the Indebtedness, and shall be secured by this Security Instrument to the same extent and with the same priority as the principal and interest payable under the Note.

**12.**     **Inspection of Mortgaged Property.** In addition to any rights Lender may have under the laws and regulations where the Mortgaged Property is located, Lender may make, or authorize other persons, including, but not limited to, appraisers and prospective purchasers at any foreclosure sale commenced by Lender, to enter on or inspect the Mortgaged Property at reasonable times and for reasonable durations. Borrower shall permit all such entries and inspections to be made as long as Lender has given Borrower written notice of such inspection at least 24 hours before the entry and inspection.

**13.**     **Uniform Commercial Code Security Agreement.** This Security Instrument is intended to be and shall constitute a security agreement under the Uniform Commercial Code for any of the Personalty specified as part of the Mortgaged Property that, under Governmental Requirements, may be subject to a security interest under the Uniform Commercial Code, and Borrower grants to Lender a security interest in those items. Borrower authorizes Lender to file financing statements in all states, counties, and other jurisdictions as Lender may elect, without Borrower's signature if permitted by law. Borrower agrees that Lender may file this Security Instrument, or a copy of it, in the real estate records or other appropriate index or in the Office of the Secretary of State and such other states as the Lender may elect, as a financing statement for any of the items specified above as part of the Mortgaged Property. Any reproduction of this Security Instrument or executed duplicate original of this Security Instrument, or a copy certified by a County Recorder in the state where the Mortgaged Property is located, or of any other security agreement or financing statement, shall be sufficient as a financing statement. In addition, Borrower agrees to execute and deliver to Lender, at Lender's request, any UCC financing statements, as well as any extensions, renewals, and amendments, and copies of this Security Instrument in such form as Lender may require to perfect a security interest with respect to the Personalty. Borrower shall pay all costs of filing such financing statements and any extensions, renewals, amendments, and releases of such statements, and shall pay all reasonable costs and expenses of any record searches for financing statements that Lender may reasonably require. Without the prior written consent of Lender, Borrower shall not create or suffer to be created any other security interest in the items, including any replacements and additions.

On any Event of Default, Lender shall have the remedies of a secured party under the Uniform Commercial Code and, at Lender's option, may also invoke the remedies provided in the Non-Uniform Covenants section of this Security Instrument as to such items. In exercising any of these remedies, Lender may proceed against the items of Mortgaged Property and any items of Personalty separately or together and in any order whatsoever, without in any way affecting the availability of Lender's remedies

14

© 2007 Geraci Law ▮▮▮▮▮▮▮▮ts Reserved.
Deed of Trust | Loan

v171

EXHIBIT 3

under the Uniform Commercial Code or of the remedies provided in the Non-Uniform Covenants section of this Security Instrument.

**14.     Fixture Filing.** This Security Instrument constitutes a financing statement filed as a fixture filing under the Uniform Commercial Code, as amended or recodified from time to time, covering any portion of the Mortgaged Property that now is or later may become a fixture attached to the Mortgaged Property or to any Improvement. The addresses of Borrower ("Debtor") and Lender ("Secured Party") are set forth on the first page of this Security Instrument.

**15.     Waiver of Statute of Limitations.** Borrower waives the right to assert any statute of limitations as a defense to the Loan Documents and the Obligations secured by this Security Instrument, to the fullest extent permitted by Governmental Requirements.

**16.     Default.** Any Event of Default, as defined in the Loan Agreement, shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any event which, with any required lapse of time or notice, may constitute an Event of Default, whether or not any such requirement for notice or lapse of time has been satisfied).

**17.     Acceleration on Transfer or Encumbrance.**

**17.1     Acceleration on Transfer or Encumbrance of Mortgaged Property.** If Borrower sells, gives an option to purchase, exchanges, assigns, conveys, encumbers (including, but not limited to PACE/HERO loans, any loans where payments are collected through property tax assessments, and super-voluntary liens which are deemed to have priority over the lien of the Security Instrument) (other than with a Permitted Encumbrance), transfers possession, or alienates all or any portion of the Mortgaged Property, or any of Borrower's interest in the Mortgaged Property, or suffers its title to, or any interest in, the Mortgaged Property to be divested, whether voluntarily or involuntarily; or if there is a sale or transfer of any interests in Borrower; or if Borrower changes or permits to be changed the character or use of the Mortgaged Property, or drills or extracts or enters into any lease for the drilling or extracting of oil, gas, or other hydrocarbon substances or any mineral of any kind or character on the Mortgaged Property; or if title to such Mortgaged Property becomes subject to any lien or charge, voluntary or involuntary, contractual or statutory, without Lender's prior written consent, then Lender, at Lender's option, may, without prior notice, declare all sums secured by this Security Instrument, regardless of their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents. For purposes of this Section "interest in the Mortgaged Property" means any legal or beneficial interest in the Mortgaged Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract, or escrow agreement, the intent of which is the transfer of title by Borrower to a purchaser at a future date.

**17.2     Replacement Personalty.** Notwithstanding anything to the contrary herein, Borrower may from time to time replace Personalty constituting a part of the Mortgaged Property, as long as (a) the replacements for such Personalty are of equivalent value and quality; (b) Borrower has good and clear title to such replacement Personalty free and clear of any and all liens, encumbrances, security interests, ownership interests, claims of title (contingent or otherwise), or charges of any kind, or the rights of any conditional sellers, vendors, or any other third parties in or to such replacement Personalty have been expressly subordinated to the lien of the Security Instrument in a manner satisfactory to Lender and at no cost to Lender; and (c) at Lender's option, Borrower provides at no cost to Lender satisfactory evidence that the Security Instrument constitutes a valid and subsisting lien on and security interest in such replacement Personalty of the same priority as this Security Instrument has on the Mortgaged Property and is not subject to being subordinated or its priority affected under any Governmental Requirements.

15

© 2007 Geraci Law Firm. All Rights Reserved.
Deed of Trust | Loa

v171

EXHIBIT 3

**17.3    Junior Liens.** If Lender consents in writing, in Lender's sole and absolute discretion, the due-on-encumbrance prohibition shall not apply to a junior voluntary deed of trust or mortgage lien in favor of another lender encumbering the Mortgaged Property (the principal balance of any such junior encumbrance shall be added to the principal balance of the Indebtedness for purposes of determining compliance with the financial covenants of the Loan Agreement and the Note). Borrower shall reimburse Lender for all out-of-pocket costs and expenses incurred in connection with such encumbrance. Should Borrower fail to obtain Lender's express written consent to any junior voluntary lien, then Lender, at Lender's option, may, without prior notice and subject to Applicable Law, declare all sums secured by this Security Instrument, regardless of any their stated due date(s), immediately due and payable and may exercise all rights and remedies in the Loan Documents.

**18.    Waiver of Marshaling.** Despite the existence of interests in the Mortgaged Property other than that created by this Security Instrument, and despite any other provision of this Security Instrument, if Borrower defaults in paying the Indebtedness or in performing any Obligations, Lender shall have the right, in Lender's sole and absolute discretion, to establish the order in which the Mortgaged Property will be subjected to the remedies provided in this Security Instrument and to establish the order in which all or any part of the Indebtedness secured by this Security Instrument is satisfied from the proceeds realized on the exercise of the remedies provided in this Security Instrument. Borrower and any person who now has or later acquires any interest in the Mortgaged Property with actual or constructive notice of this Security Instrument waives any and all rights to require a marshaling of assets in connection with the exercise of any of the remedies provided in this Security Instrument or otherwise provided by Governmental Requirements.

**19.    Consents and Modifications; Borrower and Lien Not Released.** Despite Borrower's default in the payment of any Indebtedness secured by this Security Instrument or in the performance of any Obligations under this Security Instrument or Borrower's breach of any obligation, covenant, or agreement in the Loan Documents, Lender, at Lender's option, without notice to or consent from Borrower, any guarantor of the Indebtedness and of Borrower's Obligations under the Loan Documents, or any holder or claimant of a lien or interest in the Mortgaged Property that is junior to the lien of this Security Instrument, and without incurring liability to Borrower or any other person by so doing, may from time to time (a) extend the time for payment of all or any portion of Borrower's Indebtedness under the Loan Documents; (b) accept a renewal note or notes, or release any person from liability, for all or any portion of such Indebtedness; (c) agree with Borrower to modify the terms and conditions of payment under the Loan Documents; (d) reduce the amount of the monthly installments due under the Note; (e) reconvey or release other or additional security for the repayment of Borrower's Indebtedness under the Loan Documents; (f) approve the preparation or filing of any map or plat with respect to the Mortgaged Property; (g) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument; and (h) agree with Borrower to modify the term, the rate of interest, or the period of amortization of the Note or alter the amount of the monthly installments payable under the Note. No action taken by Lender under this Section shall be effective unless it is in writing, subscribed by Lender, and, except as expressly stated in such writing, no such action will impair or affect (i) Borrower's obligation to pay the Indebtedness secured by this Security Instrument and to observe all Obligations of Borrower contained in the Loan Documents; (ii) the guaranty of any Person of the payment of the Indebtedness secured by this Security Instrument; or (iii) the lien or priority of the lien of this Security Instrument. At Lender's request, Borrower shall promptly pay Lender a reasonable service charge, together with all insurance premiums and Attorneys' Fees as Lender may have advanced, for any action taken by Lender under this Section.

16

v171

EXHIBIT 3

Whenever Lender's consent or approval is specified as a condition of any provision of this Security Instrument, such consent or approval shall not be effective unless such consent or approval is in writing, signed by two authorized officers of Lender.

**20.     Future Advances.**  On request by Borrower, Lender, at Lender's option, may make future advances to Borrower. All such future advances, with interest, shall be added to and become a part of the Indebtedness secured by this Security Instrument when evidenced by promissory notes reciting that such note(s) are secured by this Security Instrument.

**21.     Prepayment.**  If the Loan Documents provide for a fee or charge as consideration for the acceptance of prepayment of principal, Borrower agrees to pay said fee or charge if the Indebtedness or any part of it shall be paid, whether voluntarily or involuntarily, before the due date stated in the Note, even if Borrower has defaulted in payment or in the performance of any agreement under the Loan Documents and Lender has declared all sums secured by this Security Instrument immediately due and payable.

**22.     Governing Law; Consent to Jurisdiction and Venue.**  This Loan is made by Lender and accepted by Borrower in the State of Illinois except that at all times the provisions for the creation, perfection, priority, enforcement and foreclosure of the liens and security interests created in the Mortgaged Property under the Loan Documents shall be governed by and construed according to the laws of the state in which the Mortgaged Property is situated.  To the fullest extent permitted by the law of the state in which the Mortgaged Property is situated, the law of the State of Illinois shall govern the validity and enforceability of all Loan Documents, and the debt or obligations arising hereunder (but the foregoing shall not be construed to limit Lender's rights with respect to such security interest created in the state in which the Mortgaged Property is situated).  The parties agree that jurisdiction and venue for any dispute, claim or controversy arising, other than with respect to perfection and enforcement of Lender's rights against the Mortgaged Property, shall be Cook County, Illinois, or the applicable federal district court that covers said County, and Borrower submits to personal jurisdiction in that forum for any and all purposes. Borrower waives any right Borrower may have to assert the doctrine of forum non conveniens or to object to such venue.

BORROWER'S INITIALS

**23.     Taxation of Security Instrument.**  In the event of the enactment of any law deducting from the value of the Mortgaged Property any mortgage lien on it, or imposing on Lender the payment of all or part of the taxes, charges, or assessments previously paid by Borrower under this Security Instrument, or changing the law relating to the taxation of mortgages, debts secured by mortgages, or Lender's interest in the Mortgaged Property so as to impose new incidents of tax on Lender, then Borrower shall pay such taxes or assessments or shall reimburse Lender for them; provided, however, that if in the opinion of Lender's counsel such payment cannot lawfully be made by Borrower, then Lender may, at Lender's option, declare all sums secured by this Security Instrument to be immediately due and payable without notice to Borrower.  Lender may invoke any remedies permitted by this Security Instrument.

**24.     Mechanic's Liens.**  Borrower shall pay from time to time when due, all lawful claims and demands of mechanics, materialmen, laborers, and others that, if unpaid, might result in, or permit the creation of, a lien on the Mortgaged Property or any part of it, or on the Rents arising therefrom, and in general shall do or cause to be done everything necessary so that the lien and security interest of this Security Instrument shall be fully preserved, at Borrower's expense, without expense to Lender; provided, however, that if Governmental Requirements empower Borrower to discharge of record any mechanic's,

17

EXHIBIT 3

laborer's, materialman's, or other lien against the Mortgaged Property by the posting of a bond or other security, Borrower shall not have to make such payment if Borrower posts such bond or other security on the earlier of (a) 10 days after the filing or recording of same or (b) within the time prescribed by law, so as not to place the Mortgaged Property in jeopardy of a lien or forfeiture.

**25.     Liability for Acts or Omissions.**  Lender shall not be liable or responsible for its acts or omissions under this Security Instrument, except for Lender's own gross negligence or willful misconduct, or be liable or responsible for any acts or omissions of any agent, attorney, or employee of Lender, if selected with reasonable care.

**26.     Notices.**  Except for any notice required by Governmental Requirements to be given in another manner, any notice required to be provided in this Security Instrument shall be given in accordance with the Loan Agreement.

**27.     Statement of Obligations.**  Except as otherwise provided by Governmental Requirements, at Lender's request, Borrower shall promptly pay to Lender such fee as may then be provided by law as the maximum charge for each statement of obligations, Lender's statement, Lender's demand, payoff statement, or other statement on the condition of, or balance owed, under the Note or secured by this Security Instrument.

**28.     Remedies Are Cumulative.**  Each remedy in this Security Instrument is separate and distinct and is cumulative to all other rights and remedies provided by this Security Instrument or by Governmental Requirements, and each may be exercised concurrently, independently, or successively, in any order whatsoever.

**29.     Obligations of Borrower Joint and Several.**  If more than one Person is named as Borrower, each obligation of Borrower under this Security Instrument shall be the joint and several obligations of each such Person.

**30.     Delegation of Authority.**  Whenever this Security Instrument provides that Borrower authorizes and appoints Lender as Borrower's attorney-in-fact to perform any act for or on behalf of Borrower or in the name, place, and stead of Borrower, Borrower expressly understands and agrees that this authority shall be deemed a power coupled with an interest and such power shall be irrevocable.

**31.     Funds for Taxes and Insurance.**  If Borrower is in default under this Security Instrument or any of the Loan Documents, regardless of whether the default has been cured, then Lender may at any subsequent time, at its option to be exercised on 30 days written notice to Borrower, require Borrower to deposit with Lender or its designee, at the time of each payment of an installment of interest or principal under the Note, an additional amount sufficient to discharge the obligations of Borrower under the Note and this Security Instrument as they become due.  The calculation of the amount payable and of the fractional part of it to be deposited with Lender shall be made by Lender in its sole and absolute discretion.  These amounts shall be held by Lender or its designee not in trust and not as agent of Borrower and shall not bear interest, and shall be applied to the payment of any of the Obligations under the Loan Documents in such order or priority as Lender shall determine.  If at any time within 30 days before the due date of these obligations the amounts then on deposit shall be insufficient to pay the obligations under the Note and this Security Instrument in full, Borrower shall deposit the amount of the deficiency with Lender within 10 days after Lender's demand.  If the amounts deposited are in excess of the actual obligations for which they were deposited, Lender may refund any such excess, or, at its option, may hold the excess in a reserve account, not in trust and not bearing interest, and reduce proportionately the required monthly deposits for the ensuing year.  Nothing in this Section shall be deemed to affect any right or remedy of Lender under any other provision of this Security Instrument or under any statute or rule of law to pay any such amount and to add the amount so paid to the Indebtedness secured by this

18

© 2007 Geraci Law Fi████████ Reserved.
Deed of Trust | Loan █████                                                              v171

EXHIBIT 3

Security Instrument. Lender shall have no obligation to pay insurance premiums or taxes except to the extent the fund established under this Section is sufficient to pay such premiums or taxes, to obtain insurance, or to notify Borrower of any matters relative to the insurance or taxes for which the fund is established under this Section. Notwithstanding the preceding, Borrower and Lender may agree to impounds of taxes and insurance which impounds shall be identified in the Note.

Lender or its designee shall hold all amounts so deposited as additional security for the sums secured by this Security Instrument. Lender may, in its sole and absolute discretion and without regard to the adequacy of its security under this Security Instrument, apply such amounts or any portion of it to any Indebtedness secured by this Security Instrument, and such application shall not be construed to cure or waive any default or notice of default under this Security Instrument.

If Lender requires deposits to be made under this Section, Borrower shall deliver to Lender all tax bills, bond and assessment statements, statements for insurance premiums, and statements for any other obligations referred to above as soon as Borrower receives such documents.

If Lender sells or assigns this Security Instrument, Lender shall have the right to transfer all amounts deposited under this Section to the purchaser or assignee. After such a transfer, Lender shall be relieved and have no further liability under this Security Instrument for the application of such deposits, and Borrower shall look solely to such purchaser or assignee for such application and for all responsibility relating to such deposits.

## 32.    General Provisions.

**32.1    Successors and Assigns.** This Security Instrument is made and entered into for the sole protection and benefit of Lender and Borrower and their successors and assigns, and no other Person or Persons shall have any right of action under this Security Instrument. The terms of this Security Instrument shall inure to the benefit of the successors and assigns of the parties, provided, however, that the Borrower's interest under this Security Instrument cannot be assigned or otherwise transferred without the prior consent of Lender. Lender in its sole discretion may transfer this Security Instrument, and may sell or assign participations or other interests in all or any part of this Security Instrument, all without notice to or the consent of Borrower.

**32.2    Meaning of Certain Terms.** As used in this Security Instrument and unless the context otherwise provides, the words "herein," "hereunder" and "hereof" mean and include this Security Instrument as a whole, rather than any particular provision of it.

**32.3    Authorized Agents.** In exercising any right or remedy, or taking any action provided in this Security Instrument, Lender may act through its employees, agents, or independent contractors, as Lender expressly authorizes.

**32.4    Gender and Number.** Wherever the context so requires in this Security Instrument, the masculine gender includes the feminine and neuter, the singular number includes the plural, and vice versa.

**32.5    Captions.** Captions and section headings used in this Security Instrument are for convenience of reference only, are not a part of this Security Instrument, and shall not be used in construing it.

## 33.    Dispute Resolution: Waiver of Right to Jury Trial.

**33.1    ARBITRATION.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO ARBITRATE ANY DISPUTES TO RESOLVE ANY CLAIMS (AS DEFINED IN THE ARBITRATION AGREEMENT).

---

© 2007 Geraci Law Firm. All Rights Reserved.
Deed of Trust | Loan
v171

EXHIBIT 3

**33.2  WAIVER OF RIGHT TO JURY TRIAL.** CONCURRENTLY HEREWITH, BORROWER AND ANY GUARANTOR SHALL EXECUTE THAT CERTAIN ARBITRATION AGREEMENT AND WAIVER OF RIGHT TO JURY TRIAL WHEREBY BORROWER, ANY GUARANTOR, AND LENDER AGREE TO WAIVE THEIR RESPECTIVE RIGHTS TO A JURY TRIAL OF ANY CLAIM (AS DEFINED IN THE ARBITRATION AGREEMENT) OR CAUSE OF ACTION BASED ON OR ARISING FROM THE LOAN.

BORROWER'S INITIALS:

**33.3  PROVISIONAL REMEDIES; FORECLOSURE AND INJUNCTIVE RELIEF.** Nothing in the Section above, shall be deemed to apply to or limit the right of Lender to: (a) exercise self-help remedies, (b) foreclose judicially or nonjudicially against any real or personal property collateral, or to exercise judicial or nonjudicial power of sale rights, (c) obtain from a court provisional or ancillary remedies (including, but not limited to, injunctive relief, a writ of possession, prejudgment attachment, a protective order or the appointment of a receiver), or (d) pursue rights against Borrower or any other party in a third party proceeding in any action brought against Lender (including, but not limited to, actions in bankruptcy court). Lender may exercise the rights set forth in the foregoing clauses (a) through (d), inclusive, before, during, or after the pendency of any proceeding referred to in the Section above. Neither the exercise of self-help remedies nor the institution or maintenance of an action for foreclosure or provisional or ancillary remedies or the opposition to any such provisional remedies shall constitute a waiver of the right of any Borrower, Lender or any other party, including, but not limited to, the claimant in any such action, to require submission of the dispute, claim or controversy occasioning resort to such remedies to any proceeding referred to in the Section above.

**34.  Contractual Right to Appoint a Receiver Upon Default.** Upon an Event of Default under this Security Instrument or a breach of any clause of any agreement signed in connection with the Loan to Borrower, Borrower agrees that Lender may appoint a receiver to control the Mortgaged Property within seven (7) days of any default. Borrower agrees to cooperate with the receiver and turn over all control to said receiver and otherwise cooperate with the receiver appointed by Lender.

**35.  Loan Agreement.** This Security Instrument is subject to the provisions of the Loan Agreement. As specifically provided in the Loan Agreement, if Borrower defaults under this Security Instrument, Lender has the right and option to foreclose against any Collateral provided under the Loan Agreement.

**36.  Condominium and Planned Unit Developments.** If any of the Mortgaged Property includes a unit or units in, together with an undivided interest in the common elements of, a condominium project (the "Condominium Project") or a Planned Unit Development ("PUD"), the following additional requirements shall be in place.

**36.1  Additional Security.** If the owners association or other entity which acts for the Condominium Project and/or PUD (the "Owners Association") holds title to property for the benefit or use of its members or shareholders, the Mortgaged Property also includes Borrower's interest in the Owners Association and the uses, proceeds and benefits of Borrower's interest.

**36.2  Obligations.** Borrower shall perform all of Borrower's obligations under the Condominium Project's and/or PUD Constituent Documents. The "Constituent Documents" are the: (1) condominium declaration and/or any other document which creates the Condominium Project and or planned unit development; (2) any by-laws; (3) any code or regulations; and (4) other equivalent documents. Borrower shall promptly pay, when due, all dues and assessments imposed pursuant to the Constituent Documents.

---

20

© 2007 Geraci Law Firm; All Rights Reserved.                                          v171
Deed of Trust | Loan N███████

EXHIBIT 3

**36.3** **Owners Association Policy Proceeds**. If the Owners Association maintains a "master" or "blanket" policy on the Condominium Project or PUD and an event of a distribution of hazard insurance proceeds in lieu of restoration or repair following a loss to the Mortgaged Property, whether to the unit or to common elements, any proceeds payable to Borrower are hereby assigned and shall be paid to Lender for application to the sums secured by this Mortgage, with any excess paid to Borrower.

**36.4** **Owners Association Liability Coverage**. Borrower shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable in form, amount, and extent of coverage to Lender.

**36.5** **Consent of Lender**. Borrower shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Mortgaged Property or consent to:

36.5.1. the abandonment and/or termination of the Condominium Project or PUD, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of taking by condemnation or eminent domain;

36.5.2. any amendment to any provision of the Constituent Documents if the provision is for the express benefit of Lender;

36.5.3. termination of professional management and assumption of self-management of the Owners Association; or

36.5.4. any action which would have the effect of rendering the any insurance coverage maintained by the Owners Association unacceptable to Lender.

## NON-UNIFORM COVENANTS.

Notwithstanding anything to the contrary elsewhere in this Security Instrument, Borrower and Lender further covenant and agree as follows:

## 37.   **Default; Acceleration; Remedies**.

**37.1**   If an Event of Default has occurred and is continuing, Lender, at its option, may declare the Indebtedness to be immediately due and payable without further demand, and may either with or without entry or taking possession as herein provided or otherwise, proceed by suit or suits at law or in equity or any other appropriate proceeding or remedy a) to enforce payment of the Loan; b) to foreclose this Security Instrument judicially or non-judicially by the power of sale granted herein; c) to enforce or exercise any right under any Loan Document; and d) to pursue any one (1)or more other remedies provided in this Security Instrument or in any other Loan Document or otherwise afforded by Applicable Law. Borrower hereby assents to the passage of a decree for the sale of the Mortgaged Property pursuant to Lender's exercise of its rights hereunder. Each right and remedy provided in this Security Instrument or any other Loan Document is distinct from all other rights or remedies under this Security Instrument or any other Loan Document or otherwise afforded by Applicable Law, and each shall be cumulative and may be exercised concurrently, independently, or successively, in any order. Borrower has the right to bring an action to assert the nonexistence of an Event of Default or any other defense of Borrower to acceleration and sale.

**37.2**   Borrower acknowledges that the power of sale granted in this Security Instrument may be exercised or directed by Lender without prior judicial hearing. In the event Lender invokes the power of sale:

37.2.1. Trustee shall mail a notice of sale to the Borrower and any other parties in the manner prescribed by Applicable Law. The Trustee shall give notice of sale by public advertisement,

21

© 2007 Geraci Law Fi███████Reserved.
Deed of Trust | Loan N█████

v171

EXHIBIT 3

once a week for three successive weeks, and by such other means as required by Applicable Law. Any such public auction may be adjourned by the Trustee by announcement at the time and place appointed for such sale or for such adjourned sale, and, without further notice or publication, such sale may be made at the time and place to which same shall be so adjourned;

37.2.2. Trustee shall have the authority to determine the terms of the sale, subject to Applicable Law. In connection with any such sale, the whole of the Mortgaged Property may be sold in one (1) parcel as an entirety or in separate lots or parcels at the same or different times. Lender shall have the right to become the purchaser at any such sale. Trustee shall be entitled to receive fees and expenses from such sale not to exceed the amount permitted by Applicable Law;

37.2.3. within a reasonable time after the sale, Trustee shall deliver to the purchaser of the Mortgaged Property a deed or such other appropriate conveyance document conveying the Mortgaged Property so sold without any express or implied covenant or warranty. The recitals in such deed or document shall be prima facie evidence of the truth of the statements made in those recitals; and

37.2.4. the outstanding principal amount of the Loan and the other Indebtedness, if not previously due, shall be and become immediately due and payable without demand or notice of any kind. If the Mortgaged Property is sold for an amount less than the amount outstanding under the Indebtedness, the deficiency shall be determined by the purchase price at the sale or sales. Borrower waives all rights, claims, and defenses with respect to Lender's ability to obtain a deficiency judgment.

37.3    Borrower acknowledges and agrees that the proceeds of any sale shall be applied as determined by Lender unless otherwise required by Applicable Law.

37.4    In connection with the exercise of Lender's rights and remedies under this Security Instrument and any other Loan Document, there shall be allowed and included as Indebtedness: 1) all expenditures and expenses authorized by Applicable Law and all other expenditures and expenses which may be paid or incurred by or on behalf of Lender for reasonable legal fees, appraisal fees, outlays for documentary and expert evidence, stenographic charges and publication costs; 2) all expenses of any environmental site assessments, environmental audits, environmental remediation costs, appraisals, surveys, engineering studies, wetlands delineations, flood plain studies, and any other similar testing or investigation deemed necessary or advisable by Lender incurred in preparation for, contemplation of or in connection with the exercise of Lender's rights and remedies under the Loan Documents; and 3) costs (which may be reasonably estimated as to items to be expended in connection with the exercise of Lender's rights and remedies under the Loan Documents) of procuring all abstracts of title, title searches and examinations, title insurance policies, and similar data and assurance with respect to title as Lender may deem reasonably necessary either to prosecute any suit or to evidence the true conditions of the title to or the value of the Mortgaged Property to bidders at any sale which may be held in connection with the exercise of Lender's rights and remedies under the Loan Documents. All expenditures and expenses of the nature mentioned in this Section, and such other expenses and fees as may be incurred in the protection of the Mortgaged Property and rents and income therefrom and the maintenance of the lien of this Security Instrument, including the fees of any attorney employed by Lender in any litigation or proceedings affecting this Security Instrument, the Note, the other Loan Documents, or the Mortgaged Property, including bankruptcy proceedings, any Foreclosure Event, or in preparation of the commencement or defense of any proceedings or threatened suit or proceeding, or otherwise in dealing specifically therewith, shall be so much additional Indebtedness and shall be immediately due and payable by Borrower, with interest thereon at the Default Rate until paid.

37.5    Any action taken by Trustee or Lender pursuant to the provisions of this Section shall comply with the laws of the Property Jurisdiction. Such Applicable Laws shall take precedence over the

22

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan N

v171

EXHIBIT 3

provisions of this Section, but shall not invalidate or render unenforceable any other provision of any Loan Document that can be construed in a manner consistent with any Applicable Law. If any provision of this Security Instrument shall grant to Lender (including Lender acting as a mortgagee-in-possession), Trustee or a receiver appointed pursuant to the provisions of this Security Instrument any powers, rights or remedies prior to, upon, during the continuance of or following an Event of Default that are more limited than the powers, rights, or remedies that would otherwise be vested in such party under any Applicable Law in the absence of said provision, such party shall be vested with the powers, rights, and remedies granted in such Applicable Law to the full extent permitted by law.

**38.    Trustee.** The Trustee shall be deemed to have accepted the terms of this trust when this Security Instrument, duly executed and acknowledged, is made a public record as provided by law. The Trustee shall not be obligated to notify any party to this Security Instrument of any pending sale under any other Security Instrument or of any action or proceeding in which Borrower, Lender, or Trustee is a party, unless such sale relates to or reasonably might affect the Mortgaged Property, this Security Instrument, Lender's security for the payment of the Indebtedness and the performance of the Obligations, or the rights or powers of Lender or Trustee under the Loan Documents, or unless such action or proceeding has been instituted by Trustee against the Mortgaged Property, Borrower, or Lender.

In case of any sale hereunder, all prerequisites to the sale shall be presumed to have been performed, and in conveyance given hereunder, all statements of facts or other recitals made therein as to any of the following, shall be taken in all courts of law or equity as prima facie evidence that the facts so stated or recited are true; *i.e.*, the nonpayment of money secured; the request to Trustee to enforce this trust; the proper and due appointment of any substitute trustee; the advertisement of sale or time, place and manner of sale; or any other preliminary fact or thing. Trustee shall not be liable for any action taken or omitted to be taken by Trustee in good faith and reasonably believed to be within the discretion or power conferred upon Trustee by this Security Instrument and shall be answerable only for losses occurring through his or her gross negligence or willful misconduct. Borrower agrees to save and hold Trustee and Lender harmless from all loss and expense, including reasonable Attorneys' Fee, costs of a title search or abstract, and preparation of survey, incurred by reason of any action, suit or proceeding (including an action, suit or proceeding to foreclose on or collect the debt secured hereby) in and to which Trustee or Lender may be or become a party by reason hereof, including but not limited to, condemnation, bankruptcy and administration proceedings, as well as any other proceeding wherein proof of claim is required by law to be filed or in which it becomes necessary to defend or uphold the terms of this Security Instrument, and in each such instance, all money paid or expended by Trustee or Lender, together with interest thereon from date of such payment at the rate set forth in said Note or at the Default Rate, whichever is higher, shall be so much additional indebtedness secured hereby and shall be immediately due and payable by Borrower.

**39.    Power of Trustee to Reconvey or Consent.** At any time, without liability and without notice to Borrower, on Lender's written request and presentation of the Note and this Security Instrument to Trustee for endorsement, and without altering or affecting (a) the personal liability of Borrower or any other person for the payment of the Indebtedness secured by this Security Instrument, or (b) the lien of this Security Instrument on the remainder of the Mortgaged Property as security for the repayment of the full amount of the Indebtedness then or later secured by this Security Instrument, (c) or any right or power of Lender or Trustee with respect to the remainder of the Mortgaged Property, Trustee may (i) reconvey or release any part of the Mortgaged Property from the lien of this Security Instrument; (ii) approve the preparation or filing of any map or plat of the Mortgaged Property; (iii) join in the granting of any

---

23

© 2007 Geraci Law ▮▮▮▮▮▮▮ Reserved.
Deed of Trust | Loan ▮▮▮▮▮                                                                                    v171

EXHIBIT 3

easement burdening the Mortgaged Property; or (iv) enter into any extension or subordination agreement affecting the Mortgaged Property or the lien of this Security Instrument.

**40.   Duty to Reconvey.** On Lender's written request reciting that all sums secured hereby have been paid, surrender of the Note and this Security Instrument to Trustee for cancellation and retention by Trustee, and payment by Borrower of any reconveyance fees customarily charged by Trustee, Trustee shall reconvey, without warranty, the Mortgaged Property then held by Trustee under this Security Instrument. The recitals in such reconveyance of any matters of fact shall be conclusive proof of their truthfulness. The grantee in such reconveyance may be described as "the person or persons legally entitled to the Mortgaged Property." Such request and reconveyance shall operate as a reassignment of the Rents assigned to Lender in this Security Instrument.

**41.   Substitution of Trustee.** Lender, at Lender's option, may from time to time, by written instrument, substitute a successor or successors to any Trustee named in or acting under this Security Instrument, which instrument, when executed and acknowledged by Lender and recorded in the office of the Recorder of the county or counties in which the Mortgaged Property is located, shall constitute conclusive proof of the proper substitution of such successor Trustee or Trustees, who shall, without conveyance from the predecessor Trustee, succeed to all right, title, estate, powers, and duties of such predecessor Trustee, including, without limitation, the power to reconvey the Mortgaged Property. To be effective, the instrument must contain the names of the original Borrower, Trustee, and Lender under this Security Instrument, the book and page or instrument or document number at which, and the county or counties in which, this Security Instrument is recorded, and the name and address of the substitute Trustee. If any notice of default has been recorded under this Security Instrument, this power of substitution cannot be exercised until all costs, fees, and expenses of the then acting Trustee have been paid. On such payment, the then acting Trustee shall endorse receipt of the payment on the instrument of substitution. The procedure provided in this Section for substitution of Trustees is not exclusive of other provisions for substitution provided by Governmental Requirements.

**42.   Assignment of Rents.** This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property under Maryland law. This assignment of Rents is to be effective to create a present security interest in existing and future Rents of the Mortgaged Property, and constitutes a present assignment of the Rents subject only to the rights to receive and collect Rents granted by Lender to Borrower in this Security Instrument.

**43.   Appointment of Receiver.** In addition to any right of Lender to appoint a receiver provided for in this Security Instrument, if the Lender deems it necessary or convenient to have the rents collected by a receiver appointed for that purpose following an event of default, the Lender may apply to a court of competent jurisdiction for the appointment of a receiver of the Mortgaged Property, without notice and without regard for the adequacy of the security for the Indebtedness and without regard for the solvency of Borrower, any guarantor, or of any person, firm or other entity liable for the payment of the Indebtedness and shall have a receiver appointed. The Borrower further hereby consents to the appointment of a receiver should Lender elect to seek such relief.

**44.   Waiver of Right of Offset.** No portion of the Indebtedness secured by this Security Instrument shall be or be deemed to be offset or compensated by all or any part of any claim, cause of action, counterclaim, or cross-claim, whether liquidated or unliquidated, that Borrower may have or claim to have against Lender. Borrower hereby waives the right to offset, to the fullest extent permitted by Maryland law.

---

24

© 2007 Geraci Law Firm; All Rights Reserved.
Deed of Trust | Loan

v171

EXHIBIT 3

**45.**    **Commercial/Business Purpose Loan.**    Borrower hereby represents and warrants that the Loan is a commercial loan and an extension of credit for commercial and business purposes, as such terms are used in Title 12 of the Commercial Law Article of the Annotated Code of Maryland, as may be amended.

[SIGNATURES FOLLOW]

© 2007 Geraci Law ▮▮▮▮▮▮ Reserved.    v171
Deed of Trust | Loa▮

EXHIBIT 3

IN WITNESS WHEREOF, Borrower has executed and delivered this Security Instrument as of the date first written above.

**BORROWER:**

**LEVY VENTURES L.L.C., A MARYLAND LIMITED LIABILITY COMPANY**

By: _____

Eluzer Gold, Sole Member

© 2007 Geraci L          s Reserved.
Deed of Trust | L   v171

EXHIBIT 3

A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of _New York_ )

County of _Ruckland_ )

On _3/23/23_ before me, _Jason C Standard_, Notary Public
　　　Date　　　　　　　　　　　　　_Here Insert Name of the Officer_

Personally Appeared _Elvzer Gold_
　　　　　　　　　　　　_Name(s) of Signer(s)_

who proved to me on the basis of satisfactory evidence to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

I certify under PENALTY OF PERJURY under the laws of the State of _New York_ that the foregoing paragraph is true and correct.

WITNESS my hand and official seal.

Signature _____
　　　　　　_Signature of Notary Public_

```
JASON C. STANDARD
NOTARY PUBLIC, STATE OF NEW YORK
No. 01ST8413797
Qualified in Westchester County
My Commission Expires 02/01/2025
```

27

© 2007 Geraci Law ▮▮▮▮▮▮▮ Reserved.
Deed of Trust | Loan ▮▮▮▮▮▮

v171

EXHIBIT 3

**EXHIBIT "A"**
**LEGAL PROPERTY DESCRIPTION**

Beginning for the same on the northeast side of Eierman Avenue at a point distant 56.37 feet from the northwest side of an alley 15 feet wide there situate; the northwest side of said alley being 115 feet 2 inches northwest from the northwest side of the Belair Road which place of beginning is intended to be in house on the lot of ground now being described and the house on the lot of ground adjoining on the northeast thereof; running thence northwesterly binding on the northeast side of Eierman Avenue 14 feet, more or less to a point in line with the center of the adjoining on the northwest thereof;, and running thence northeasterly along said line to and through the center of said last mentioned partition wall and continuing the same course in all 128.81 feet, more or less, to the southwest side of an alley 20 feet wide there situate; thence southeasterly binding on said alley with the use of same in common 14 feet, more or less, to meet a line drawn northeasterly through the center of the partition wall first herein mentioned; thence reversing said line so drawn and binding thereon northwesterly and to and through the center of said partition wall 129.71 feet, more or less, to the place of beginning.

© 2007 Geraci Law ███████████ Reserved.
Deed of Trust | Loan ████████

v171

EXHIBIT 3

**BOOK: 27105, PAGE: 404**

Baltimore City Circuit Court

| | |
|---|---|
| IMP FD SURE | $40.00 |
| RECORDING FEE | $20.00 |
| TOTAL | $60.00 |
| XAC  TR | |
| Aug 02, 2024 | 09:29 am |

**MARYLAND**

CITY OF **BALTIMORE (I)**

WHEN RECORDED MAIL TO: **FIRST AMERICAN MORTGAGE SOLUTIONS, 1795 INTERNATIONAL WAY, IDAHO FALLS, ID 83402**, PH. **208-528-9895**

# ASSIGNMENT OF MORTGAGE OR DEED OF TRUST

KNOWN ALL MEN BY THESE PRESENTS that for value received, the receipt of which is hereby acknowledged, **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE OR BENEFICIARY, AS NOMINEE FOR BPL MORTGAGE TRUST, LLC, ITS SUCCESSORS AND ASSIGNS**, located at **P.O. BOX 2026, FLINT, MICHIGAN 48501-2026**, Assignor, does hereby grant, assign, transfer, and set over without recourse, representation or warranty, expressed or implied unto **U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS DELAWARE TRUSTEE FOR STONE ROOTS M TRUST**, located at **1011 CENTRE ROAD C/O US BANK TRUST NATIONAL ASSOCIATION, WILMINGTON, DE 19805**, Assignee, its successors and assigns, all Assignor's rights, title and interest in and to that certain Mortgage or Deed of Trust described below.

Said Mortgage or Deed of Trust dated **MARCH 23, 2023**, executed and delivered by **LEVY VENTURES L.L.C., A MARYLAND LIMITED LIABILITY COMPANY**, Mortgagor or Trustor, to or for the benefit of **BPL MORTGAGE TRUST, LLC**, Original Mortgagee or Beneficiary, and recorded on **APRIL 14, 2023** in Liber **25783** at Folio **12** of the Mortgage Records in the Circuit Court Clerk's office in and for the City of **BALTIMORE (I)**, State of **MARYLAND**.

Property Address: **4150 EIERMAN AVE, BALTIMORE, MD 21206**

TOGETHER with all rights, title and interest, accrued or to accrue under said Mortgage or Deed of Trust.

IN  WITNESS  WHEREOF,  the  undersigned  has  caused  this  Instrument  to  be  executed  on **JUL 2 6 2024** .

**MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE OR BENEFICIARY, AS NOMINEE FOR BPL MORTGAGE TRUST, LLC, ITS SUCCESSORS AND ASSIGNS**

ANGIE FAY CHAPMAN, VICE PRESIDENT

**Page 1 of 2**

EXHIBIT 4

BOOK: 2710 PAGE: 405

STATE OF **SOUTH CAROLINA** COUNTY OF **GREENVILLE** ) ss.

On **JUL 2 6 2024**, before me, _Jessica R. Blackwell_, personally appeared **ANGIE FAY CHAPMAN** known to me to be the **VICE PRESIDENT** of **MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC. ("MERS"), AS MORTGAGEE OR BENEFICIARY, AS NOMINEE FOR BPL MORTGAGE TRUST, LLC, ITS SUCCESSORS AND ASSIGNS** the corporation that executed the instrument or the person who executed the instrument on behalf of said corporation, and acknowledged to me that such corporation executed the same.

Jessica R. Blackwell _____ (COMM. EXP.

___9/1/2030___ )
NOTARY PUBLIC

**Page 2 of 2**

EXHIBIT 4

**SERVICELINK**

**Broker Price Opinion**

| State Specific Language |
|---|

**COMPETITIVE MARKET ANALYSIS DISCLOSURE**
This analysis is not an appraisal. It is intended only for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property.

| Client Information |
|---|

| | | | |
|---|---|---|---|
| Client: | **Shellpoint** | Portfolio / Project Name: | |
| | | Alternate Loan Number: | |
| | | Inspection Date: | **05/15/2025** |
| Owner / Borrower: | **LEVY VENTURES LLC** | Inspection Type: | **Exterior** |
| Subject Address: | **4150 Eierman Ave** | Contact: | **ServiceLink** |
| | **BALTIMORE, MD 21206** | Contact Phone: | |
| Subject County: | **BALTIMORE CITY** | Company Name: | **Marathon Real Estate** |
| Subject APN: | **0327015898H066** | Broker's Name: | **Tia Jones-Johnson** |
| Preparer's Name: | **Tia Jones-Johnson** | Broker's License Number: | **32214** |
| Preparer's License Number: | **625425** | | |
| Preparer's Contact Number: | **410-793-7195** | | |
| Preparer's Distance From the Subject (Driving): | **23** | | |

| Subject Tax and Sale Information |
|---|

| | | | |
|---|---|---|---|
| Estimated Tax Assessed Value Date: | **01/01/2023** | Last Known Sale Date: | **04/14/2023** |
| Tax Assessed Value: | $ **131,667** | Last Known Sale Price: | $ **225,000** |

| Neighborhood Information |
|---|

| | | | | |
|---|---|---|---|---|
| Predominant Occupancy: | **Owner** | Average Market Time of Sales: | **45** | |
| No. of Homes in Direct Competition: | **7** | Price Range (Low to High): | $ **100,000** to $ **210,000** | |
| Density: | **Suburban** | Predominant Value: | $ **120,000** | |
| Zoning: | **Residential** | Property Values Trend: | **Stable** **0** | % annually |
| Property Maintenance: | **Average** | Market Rent: | $ **1,400** | |
| | | Market Rent Trend: | **Stable** **0** | % annually |

| | |
|---|---|
| Market / Neighborhood Comments: | **Market area has stabilized as inventory and average DOM are on decline. Average condition. Limited distressed comps in area, predominantly FMV.** |

| Subject Property |
|---|

| | | | |
|---|---|---|---|
| Listed in Last 12 Months: | **No** | Currently Listed: | **No** |
| Vacant: | **No** | List Price: | $ |
| Secured: | **Yes** | Listing Agent Name: | |
| Conform to Neighborhood: | **Yes** | Listing Agent Phone: | |
| Estimated Land Price: | $ **37,000** | Days on Market: | |
| Mobile Home Permanently Attached and Taxed as Real Estate: | **N/A** | | |

Problem for Resale: **NO**

Environmental **NO**
Problem:

Subject Data Source(s): ☐ Tax Records  ☐ SiteXdata  ☒ MLS # **MDBA2066**  ☐ RealQuest  ☐ REDLINK  ☐ Estimated  ☐ Other

Explanation of
Estimated or Other
Sources:

| | |
|---|---|
| Positive Subject Comments: | **Two story all brick rowhome in average condition.** |

| | |
|---|---|
| Negative Subject Comments: | **None noted.** |

©ServiceLink 2020. All Rights Reserved.

SLBPO2_21 05312022

EXHIBIT 5

**SERVICELINK**

**Broker Price Opinion**

Client: **Shellpoint**

| | SUBJECT ADDRESS | COMPARABLE 1 | COMPARABLE 2 | COMPARABLE 3 |
|---|---|---|---|---|
| Street Address: | 4150 Eierman Ave | 4153 Eierman Ave | 4026 Eierman Ave | 4211 Sheldon Ave |
| City, State, Zip: | BALTIMORE, MD 21206 | Baltimore, MD 21206 | Baltimore, MD 21206 | Baltimore, MD 21206 |
| Property Type: | Single Family | Single Family | Single Family | Single Family |
| Property Style: | Townhouse | Townhouse | Townhouse | Townhouse |
| Number of Units: | 1 | 1 | 1 | 1 |
| Proximity to Subject: | | 0.03 miles SW | 0.07 miles NW | 0.08 miles SE |
| Sale Date: | 04/14/2023 | 02/21/2025 | 12/06/2024 | 04/15/2025 |
| Sold Price: | $ 225,000 | $ 110,000 | $ 115,000 | $ 155,000 |
| Days on Market: | 11 | 69 | 57 | 79 |
| Location: | Average | Average | Average | Average |
| Lot Size: | 1302          Sq | 1306          Sq | 1306          Sq | 1742          Sq |
| Lot Size is: | Typical | Typical | Typical | Typical |
| Age in Years: | 98 | 98 | 98 | 88 |
| Condition: | Average | Average | Average | Average |
| Total Rooms: | 6 | 6 | 6 | 6 |
| Bedrooms: | 3 | 3 | 3 | 3 |
| Bathrooms: | 1    Full    0    Half | 2    Full    0    Half | 2    Full    0    Half | 1    Full    0    Half |
| Above Grade Sq. Footage: | 1276 | 1136 | 1136 | 1360 |
| Total Below Grade Sq.Ft.: | 568 | 568 | 568 | 800 |
| Garage: | 0    Car N/A | 0    Car N/A | 0    Car N/A | 1    Car Attached |
| Carport: | 0    Car N/A | 0    Car N/A | 0    Car N/A | 0    Car N/A |
| Comparison to Subject: | | Inferior | Inferior | Equal |
| Comparable Data Source: | | MLS | MLS | MLS |
| MLS Listing Number: | | MDBA2146916 | MDBA2139190 | MDBA2151892 |

| | |
|---|---|
| Explanation of Estimated or Other responses above: | |
| Comments on Comparable 1: | Comp is equal in lot and years, superior - bath, inferior - sq foot. |
| Comments on Comparable 2: | Comp is equal in lot and years, superior - bath, inferior - sq foot. |
| Comments on Comparable 3: | Comp is equal in lot and sq foot, superior - years and garage, inferior - bath. |

EXHIBIT 5

 **SERVICELINK**

**Broker Price Opinion**

Client: **Shellpoint**

## Comparative Listing Information

| | SUBJECT ADDRESS | COMPARABLE 1 | COMPARABLE 2 | COMPARABLE 3 |
|---|---|---|---|---|
| Street Address: | 4150 Eierman Ave | 4130 Eierman Ave | 4233 Sheldon Ave | 4236 Sheldon Ave |
| City, State, Zip: | BALTIMORE, MD 21206 | Baltimore, MD 21206 | Baltimore, MD 21206 | Baltimore, MD 21206 |
| Property Type: | Single Family | Single Family | Single Family | Single Family |
| Property Style: | Townhouse | Townhouse | Townhouse | Townhouse |
| Number of Units: | 1 | 1 | 1 | 1 |
| Proximity to Subject: | | 0.03 miles NW | 0.11 miles SE | 0.11 miles SE |
| Listing Date: | 11/04/2022 | 02/21/2025 | 04/11/2025 | 10/15/2024 |
| Days on Market: | 11 | 36 | 4 | 51 |
| Listing Price: | $ 70,000 | $ 159,900 | $ 199,900 | $ 120,000 |
| Location: | Average | Average | Average | Average |
| Lot Size: | 1302 Sq | 1302 Sq | 1306 Sq | 1742 Sq |
| Lot Size is: | Typical | Typical | Typical | Typical |
| Age in Years: | 98 | 98 | 88 | 89 |
| Condition: | Average | Average | Average | Average |
| Total Rooms: | 6 | 6 | 6 | 7 |
| Bedrooms: | 3 | 3 | 3 | 4 |
| Bathrooms: | 1 Full 0 Half | 1 Full 1 Half | 2 Full 0 Half | 2 Full 0 Half |
| Above Grade Sq. Footage: | 1276 | 1136 | 1360 | 1530 |
| Total Below Grade Sq.Ft.: | 568 | 568 | 800 | 893 |
| Garage: | 0 Car N/A | 0 Car N/A | 1 Car Attached | 1 Car Detached |
| Carport: | 0 Car N/A | 0 Car N/A | 0 Car N/A | 0 Car N/A |
| Comparison to Subject: | | Inferior | Equal | Superior |
| Comparable Data Source: | | MLS | MLS | MLS |
| MLS Listing Number: | | MDBA2156844 | MDBA2163932 | MDBA2143432 |

Explanation of Estimated or Other responses above:

Comments on Comparable 1: Comp is equal in lot and years, inferior - bath and sq foot.

Comments on Comparable 2: Comp is equal in lot and sq foot, superior - years, bath, and garage.

Comments on Comparable 3: Comp is equal in lot, superior - years, bath, sq foot, and garage.

### Addendum
Any Additional comments regarding market area, conditions, area growth or decline, crime activity, hazards, repairs and the like.

Market area has stabilized as inventory and average DOM are on decline. Average condition. Limited distressed comps in area, predominantly FMV.

©ServiceLink 2020. All Rights Reserved.
Produced using ACI software, 800.234.8727 www.aciweb.com
Page 3 of 4
SLBPO2_21 05312022

EXHIBIT 5

 **SERVICELINK**

**Broker Price Opinion**

Client: **Shellpoint**

| Estimates of Price |
|---|

Discuss how you **Bracketed values using active and sold comps to determine value.**
arrived at these prices:

**Preparer Information**

| | | | | |
|---|---|---|---|---|
| Signed by: | Tia Jones-Johnson | On: **05/15/2025** | | |
| Broker: | Tia Jones-Johnson | Address: **1500 Defense Hwy** | | Phone: **410-793-7195** |
| | | **Gambrills, MD 21146** | | |
| Agent Name: | Tia Jones-Johnson | Proximity to Subject: **23** | Years Licensed: | **24** |
| License No: | **625425** | Type of License: **Broker** | Expiration: | **02/11/2027** |

| | | | |
|---|---|---|---|
| As Is Price Opinion: $ **125,000** | | As Repaired Price Opinion: $ **125,000** | |
| As Is Quick Sale: $ **120,000** | | As Repaired Quick Sale: $ **120,000** | |
| As Is Suggested List: $ **135,000** | | As Repaired Suggested List: $ **135,000** | |
| Land Only Price Opinion: $ **37,000** | | Estimated Cost to Repair: $ **0** | |
| Average Market Time of Sale (listing date to contract date): | **45** | | |

ServiceLink's Broker Price Opinion offers an opinion derived from analysis based on inspection of the subject property and analysis of the local market data as performed by a licensed real estate professional. Information in the report may be gathered from multiple sources, including but not limited to multiple listing services (MLS), public records, public records data services, city/county office websites, proprietary files, mapping services, or may be provided by the client. In some cases information on the subject property may be limited or unavailable, and, in some instances, may be derived from an exterior inspection of the property. The information provided assumes, unless otherwise stated in the report, the subject property is in average condition, contains no environmental, structural, or title related defects, the real property interests are fee simple, and the information relied upon is accurate. The report is based upon data that is deemed generally acceptable for products of this type. The analysis of an interest in real property for ownership or collateral purposes is prepared for the above named client only. The intended use is to assist the designated client in making an independent, internal decision regarding the subject property. The use of this report by anyone other than the client for any purpose is not permitted or authorized by ServiceLink Valuation Solutions, LLC including its subsidiaries and affiliates ("ServiceLink"). Any other use of the report by any other party is prohibited. This document is not an appraisal. The product is provided "AS IS", and no guarantee or warranty is provided. ServiceLink will not be liable for any loss, damage or injury arising out of, or in conjunction with, the client's utilization of the information contained in this report. If this report is intended to be used for loan origination purposes, the loan transaction value must be $250,000.00, or less, as required by Title XI of FIRREA.

## Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.

| State Specific Language |
|---|

## State-Specific Disclaimers

| STATE | DISCLAIMER |
|---|---|
| Arizona | Arizona Revised Statutes Annotated<br>Title 32. Professions and Occupations (Refs & Annos)<br>Chapter 36. Real Estate Appraisal (Refs & Annos)<br>Article 1. General Provisions<br>§ 32-3602. Applicability of chapter<br>This chapter does not apply to:<br>9. A person who produces a statement that is provided to any other person concerning the estimated value of real property through an internet website, automated valuation or other software program or other means of comparative market analysis and who discloses that the estimate is not an appraisal. |
| Arkansas | **Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property. If an appraisal is, desired the services of a licensed or certified appraiser must be obtained.**<br><br>**Pursuant to Ar Code. Ann § 17-42-110(d), a broker price opinion or market analysis issued by a real estate licensee shall not contain the terms "market value", "appraised value", or "appraisal". Any reference in the report to a specific marketing time period is for illustrative purposes only and does not obligate the licensee or broker to sell the property within the stated timeframe or act as a representation or guarantee that the property will be sold within such timeframe. Unless otherwise indicated, the broker price opinion assumes without investigation a fee simple title ownership interest without any reservation of minerals, subsurface rights, or otherwise. This broker price opinion report is to be used solely for purposes allowed by state and federal law. If the report is to be used for any purpose not specifically allowed by state and federal law, legal counsel should be consulted.** |
| Colorado | This evaluation was prepared by a licensed real estate broker and is not an appraisal. This evaluation cannot be used for the purposes of obtaining financing. |
| Delaware | **Notwithstanding any language to the contrary contained herein, this Competitive Market Analysis is NOT an appraisal of the market value for property and is not intended to be used for any legal purpose including approval of a mortgage loan, modification of a mortgage loan, divorce/property separation, estate settlement, bankruptcy proceedings or any other purpose where real estate value is needed. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.** |
| Hawaii | This opinion as to the estimated price of real estate is not an appraisal. |
| Idaho | Unless the broker is licensed under the Idaho Real Estate Appraisers Act, Chapter 41, Title 54, Idaho Code, this report is not intended to meet the Uniform Standards of Professional Appraisal Practice.  The broker's price opinion is not intended to be an appraisal of the market value of the property, and if an appraisal is desired, the services of a licensed or certified appraiser should be obtained. |
| Illinois | This is a broker price opinion/comparative market analysis, not an appraisal of the market value of the real estate, and was prepared by a licensed real estate broker or managing broker who was not acting as a State certified real estate appraiser. |
| Maine | **This opinion or appraisal was prepared solely for the client, for the purpose and function stated in this report and is not intended for subsequent use. It was not prepared by a licensed or certified appraiser and may not comply with appraisal standards of the uniform standards of professional appraisal practice.** |
| Maryland | COMPETITIVE MARKET ANALYSIS DISCLOSURE<br>This analysis is not an appraisal. It is intended only for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering, or sale price of the real property. |
| Michigan | **This is a market analysis, not an appraisal and was prepared by a licensed real estate broker or associate broker, not a licensed appraiser.** |

## State-Specific Disclaimers

| STATE | DISCLAIMER |
|---|---|
| **Minnesota** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. |
| **Mississippi** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser must be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of real property for a mortgage loan origination, including first and second mortgages, refinances or equity lines of credit. |
| **Missouri** | **This is not an appraisal.** |
| **Nebraska** | **This opinion or analysis is not an appraisal. It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing, offering or sale price of the real property or for lending purposes in a transaction other than a federally related transaction, or for real property tax appeal purposes. This opinion or analysis is not governed by the Real Property Appraiser Act.** |
| **Nevada** | **Notwithstanding any preprinted language to the contrary, this opinion is not an appraisal of the market value of the property.  If an appraisal is desired, the services of a licensed or certified appraiser must be obtained.** |
| **New Jersey** | This is not an appraisal and should not be considered the equivalent of an appraisal. |
| **North Carolina** | This opinion is not an appraisal of the market value of the property, and may not be used in lieu of an appraisal. If an appraisal is desired, the services of a licensed or certified appraiser shall be obtained. This opinion may not be used by any party as the primary basis to determine the value of a parcel of or interest in real property for a mortgage loan origination, including first and second mortgages, refinances, or equity lines of credit. |
| **Ohio** | The valuation used for the purposes of the application was obtained from a market analysis or price opinion or automated valuation model report and not from a person licensed or certified under Ohio Revised Code § 4763.19 |
| **Oregon** | This report is not intended to meet the requirements set out in the Uniform Standards of Appraisal Practice. This report is not intended as an appraisal and if an appraisal is desired, the services of a competent professional licensed appraiser should be obtained. |
| **Pennsylvania** | This analysis has not been performed in accordance with the Uniform Standards of Professional Appraisal Practice which requires valuers to act as unbiased, disinterested third parties with impartiality, objectivity and independence and without accommodation of personal interest.  It is not to be construed as an appraisal and may not be used as such for any purpose. |
| **Rhode Island** | This opinion or analysis is not a certified appraisal or an appraisal that conforms to the Uniform Standards of Professional Appraisal Practice (USPAP). It is intended only for the benefit of the addressee for the purpose of assisting buyers or sellers or prospective buyers or sellers in deciding the listing offering, or sale price of the real property and not for any other purpose, including but not limited to, lending purpose excepting that specifically provided under R.I. Gen.Laws § 5-20.7-3. |
| **South Carolina** | This valuation service may not be used for the purposes of obtaining financing in a federally related transaction. |
| **Tennessee** | This is not an appraisal. |
| **Texas** | **This represents an estimated sale price for this property. It is not the same as the opinion of value in an appraisal developed by a licensed appraiser under the Uniform Standards of Professional Appraisal Practice** |
| **Virginia** | This is not an appraisal performed in accordance with the Uniform Standards of Professional Appraisal Practice. Nor is this an appraisal as defined in Section 54.1-2009 of the Code of Virginia. |
| **Washington** | This is not an appraisal as defined in chapter 181.140 RCW and has been prepared by a real estate licensee, licensed under chapter 18.85 RCW. It has not been prepared by a state-certified or state-licensed real estate appraiser acting under their capacity as a licensee under chapter 18.140 RCW. |
| **Wyoming** | This is an opinion of price and is not a certified appraisal of the market value of the property. If such an appraisal is desired, the service of a certified appraiser must be obtained. |

EXHIBIT 5

## State-Specific Disclaimers

| STATE | DISCLAIMER |
|---|---|
| West Virginia | This evaluation has been prepared in compliance with §30-38-1(c)(6) and the following conditions are satisfied, (A) The amount of the loan is equal to or less than the federal de minimus threshold; (B) the evaluation is used solely by the lender in its records to document the collateral value; (C) the evaluation clearly indicates on its face that it is for the lender's internal use only; (D) the evaluation is not labeled an appraisal and explicitly states that the evaluation was performed by an individual that is not licensed as an appraiser in accordance with §30-38-1, et seq. |

EXHIBIT 5

## SUBJECT PROPERTY PHOTO ADDENDUM

| | |
|---|---|
| Property Address: **4150 Eierman Ave** | |
| City: **BALTIMORE** | State: **MD**    Zip: **21206** |



**SUBJECT (FRONT VIEW)**



**SUBJECT (ANGLED)**



**ADDRESS VERIFICATION**

EXHIBIT 5

**SUBJECT PROPERTY PHOTO ADDENDUM**

| | | |
|---|---|---|
| Borrower: LEVY VENTURES LLC | File No.: | |
| Property Address: 4150 Eierman Ave | Case No.: | |
| City: BALTIMORE | State: MD | Zip: 21206 |
| Lender: Shellpoint | | |



**ANGLED VIEW OF
SUBJECT PROPERTY**



**STREET SCENE**

EXHIBIT 5

| Borrower: **LEVY VENTURES LLC** | File No.: | |
| Property Address: **4150 Eierman Ave** | Case No.: | |
| City: **BALTIMORE** | State: **MD** | Zip: **21206** |
| Lender: **Shellpoint** | | |



EXHIBIT 5

| | |
|---|---|
| Borrower: **LEVY VENTURES LLC** | File No.: ▉ |
| Property Address: **4150 Eierman Ave** | Case No.: |
| City: **BALTIMORE**  State: **MD**  Zip: **21206** | |
| Lender: **Shellpoint** | |



**COMPARABLE SALE #1**

4153 Eierman Ave
Baltimore, MD 21206

Sale Date:
Sale Price: $   110,000



**COMPARABLE SALE #2**

4026 Eierman Ave
Baltimore, MD 21206

Sale Date:
Sale Price: $   115,000



**COMPARABLE SALE #3**

4211 Sheldon Ave
Baltimore, MD 21206

Sale Date:
Sale Price: $   155,000

## COMPETING LISTING PHOTO ADDENDUM

| | |
|---|---|
| Borrower: **LEVY VENTURES LLC** | File No.: |
| Property Address: **4150 Eierman Ave** | Case No.: |
| City: **BALTIMORE**    State: **MD**    Zip: **21206** | |
| Lender: **Shellpoint** | |



### COMPETING LISTING #1

4130 Eierman Ave
Baltimore, MD 21206

Listing Price: $  159,900
Days-On-Market:  36



### COMPETING LISTING #2

4233 Sheldon Ave
Baltimore, MD 21206

Listing Price: $  199,900
Days-On-Market:  4



### COMPETING LISTING #3

4236 Sheldon Ave
Baltimore, MD 21206

Listing Price: $  120,000
Days-On-Market:  51

EXHIBIT 5

**LOCATION MAP**

| | | |
|---|---|---|
| Borrower: LEVY VENTURES LLC | | File No.: |
| Property Address: 4150 Eierman Ave | | Case No.: |
| City: BALTIMORE | State: MD | Zip: 21206 |
| Lender: Shellpoint | | |



Comparable Sale 2
4026 Eierman Ave
Baltimore, MD 21206
0.07 miles NW

Comparable Listing 1
4130 Eierman Ave
Baltimore, MD 21206
0.03 miles NW

Subject Property
4150 Eierman Ave
BALTIMORE, MD 21206

Comparable Sale 1
4153 Eierman Ave
Baltimore, MD 21206
0.03 miles SW

Comparable Sale 3
4211 Sheldon Ave
Baltimore, MD 21206
0.08 miles SE

Comparable Listing 3
4236 Sheldon Ave
Baltimore, MD 21206
0.11 miles SE

Comparable Listing 2
4233 Sheldon Ave
Baltimore, MD 21206
0.11 miles SE

Belair Rd

Parkside Dr

Map data ©2025 Google

EXHIBIT 5

**AERIAL MAP**

| | | | |
|---|---|---|---|
| Borrower: **LEVY VENTURES LLC** | | File No.: | |
| Property Address: **4150 Eierman Ave** | | Case No.: | |
| City: **BALTIMORE** | State: **MD** | | Zip: **21206** |
| Lender: Shellpoint | | | |



Subject Property
4150 Eierman Ave
BALTIMORE, MD 21206

EXHIBIT 5

**Signature**

| Property Address: **4150 Eierman Ave** | File No.: ███████ |
|---|---|
| City: **BALTIMORE** | State: **MD** | Zip: **21206** |

Signature

Michael Johnson

Signature

| Borrower: LEVY VENTURES LLC | | File No.: ▮▮▮▮ |
|---|---|---|
| Property Address: 4150 Eierman Ave | | Case No.: |
| City: BALTIMORE | State: MD | Zip: 21206 |
| Lender: Shellpoint | | |

**Agent 360**

4150 Eierman Ave, Baltimore, MD 21206-6317                    Tax ID 0327015898H066

 

### Summary Information

| | | | |
|---|---|---|---|
| Owner: | Levy Ventures Llc | Property Class: | Residential |
| Owner Address: | 368 New Hempstead Rd Ste 244 | Annual Tax: | $2,270 |
| Owner City State: | New City NY | Record Date: | 04/14/23 |
| Owner Zip+4: | 10956-1900 | Sale Amount: | $225,000 |
| Owner Carrier Rt: | C018 | Book: | 25783 |
| | | Page: | 9 |
| | | Tax Record Updated: | 03/25/25 |

### Geographic Information

| | | | |
|---|---|---|---|
| County: | Baltimore City, MD | Lot: | 066 |
| High Sch Dist: | Baltimore City Public Schools | Qual Code: | Average |
| Tax ID: | 0327015898H066 | Sub Section: | 01 |
| Tax Map: | 0027 | Sub District: | 0 |
| Tax ID Alt: | 27015898H066 | Legal Subdivision: | Ward 27 |
| Block: | 5898H | | |
| Tax Act Num: | 015898H066 | | |
| City Council Dist: | 27 | | |

### Assessment & Tax Information

| | | | | |
|---|---|---|---|---|
| Tax Year: | 2025 | Annual Tax (Est): | $2,270 | Taxable Total Asmt: $131,667 |
| County Tax (Est): | $108 | Taxable Land Asmt: | $37,000 | |
| Municipal Tax (Est): | $2,163 | Taxable Bldg Asmt: | $165,600 | |
| Asmt As Of: | 2025 | State/County Tax: | $108 | |

### Lot Characteristics

| | |
|---|---|
| Zoning: | R-7 |
| Zoning Desc: | General Residence District |

### Building Characteristics

| | | | | | |
|---|---|---|---|---|---|
| Total SQFT: | 1,844 | Full Baths: | 2 | Basement Type: | Yes (Type Unknown) |
| Residential Type: | Row/Twnhse/Cluster | Total Baths: | 2.0 | Year Built: | 1927 |
| Residential Design: | 1 Story | Exterior: | Brick | Total Below Grade | 568 |
| Stories: | 2.00 | Residential Style: | Attchd/Row Hse Int | SQFT: | |
| Total Units: | 1 | Stories Desc: | 2 | Other Amenities: | Extra Kitchen |
| Abv Grd Fin SQFT: | 1,276 | Roof: | Built-Up | | |
| Below Grade Unfin | 568 | Porch/Deck SQFT: | 122 | | |
| SQFT: | | Heat Delivery: | Radiators | | |
| Model: | Center Unit | Property Class | R | | |
| Fireplace Total: | | Code: | | | |
| Porch/Deck: | Porch | | | | |
| Porch Type: | 1 Story Open;Enclosed | | | | |
| Cooling: | Separate System | | | | |
| Bldg Condition: | Average | | | | |
| Sec 1 Construction: | | Sec 1 Area: | 50 | Sec 1 Story Type: | |
| Sec 1 Description: | Enclosed Porch | Sec 1 Dimensions: | | Sec 1 Type: | |
| Sec 2 Construction: | | Sec 2 Area: | 140 | Sec 2 Story Type: | 1 |
| Sec 2 Description: | 1 Story No Basement | Sec 2 Dimensions: | | Sec 2 Type: | |
| Sec 3 Construction: | | Sec 3 Area: | 568 | Sec 3 Story Type: | 2B |

EXHIBIT 5

| Borrower: LEVY VENTURES LLC | | File No.: | |
| Property Address: 4150 Eierman Ave | | Case No.: | |
| City: BALTIMORE | State: MD | | Zip: 21206 |
| Lender: Shellpoint | | | |

| | | | | |
|---|---|---|---|---|
| Sec 3 Description: | 2 Story with Basement | Sec 3 Dimensions: | Sec 3 Type: | |
| Sec 4 Construction: | | Sec 4 Area:   72 | Sec 4 Story Type:   1 | |
| Sec 4 Description: | 1 Story Open Porch | Sec 4 Dimensions: | Sec 4 Type: | |

**Codes & Descriptions**

| | | | |
|---|---|---|---|
| Land Use: | R Residential | | |
| County Legal Desc: | 14X129-9 | Use Type: | Th-c 2 Story With Basement |

**MLS History**

| Category | Status | Status Date | Price |
|---|---|---|---|
| RES | Closed | 12/14/22 | $65,000 |
| RESL | Canceled | 10/06/18 | $949 |
| RESL | Canceled | 10/22/17 | $1,299 |
| RES | Closed | 08/11/17 | $55,000 |
| RES | Closed | 12/13/16 | $40,000 |
| RES | Canceled | 09/02/16 | $59,900 |
| RES | Closed | 05/16/16 | $25,000 |
| RES | Expired | 10/13/15 | $69,900 |
| RES | Canceled | 05/29/10 | $129,900 |
| RES | Closed | 05/04/09 | $49,500 |
| RES | Closed | 04/26/07 | $95,000 |
| RES | Canceled | 01/08/07 | $99,900 |
| RES | Canceled | 10/02/06 | $99,900 |

The data on this report is compiled by BRIGHT from various public and private sources. The data on this is not a legal flood determination. Errors may exist in any field on this report, including owner's name, tax amounts, mortgage history, and property characteristics. Verify the accuracy of all data with the county or municipality.

© BRIGHT MLS - Content is reliable but not guaranteed and should be independently verified (e.g., measurements may not be exact, words may be modified, school boundaries should be confirmed by school/district). Any offer of compensation is for MLS subscribers subject to Bright MLS polices and applicable agreements with other MLSs. Copyright 2025. Created: 05/16/2025 05:08 PM

EXHIBIT 5

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

---------------------------------------------------------------X        Case No. 25-22182-shl

In Re:
                                                                                                    Chapter 11

LEVY VENTURES LLC,

                              Debtor.
---------------------------------------------------------------X

## **FRCP 55 AFFIDAVIT**

     As attorney for creditor admitted to practice before this Court, I represent that upon information and belief, the Debtor is not an infant, incompetent, or in the military.


Dated: June 26, 2025

                                       /s/ Jenelle C. Arnold
                                       Jenelle C. Arnold, Esq.

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

---------------------------------------------------------------X

In Re:

LEVY VENTURES LLC,

                          Debtor.

---------------------------------------------------------------X

Case No. 25-22182-shl

Chapter 11

**<u>ORDER LIFTING THE
AUTOMATIC STAY</u>**

      Upon reading the filing the Notice of Motion dated June 26, 2025, the Affirmation of Jenelle

C. Arnold, Esq., dated June 26, 2025 and the exhibits annexed thereto on behalf of U.S. Bank Trust

National Association, not in its individual capacity but solely as Delaware trustee for Stone Roots M

Trust ("Creditor"), by its attorneys Aldridge Pite, LLP, for an Order pursuant of 11 U.S.C. 362(d)(1)

and (2) granting relief from the automatic stay to foreclose the mortgage it holds on the property

located 4150 Eierman Ave, Baltimore, MD 21206 and sufficient cause appearing therefore; it is

      **ORDERED**, that automatic stay is hereby modified pursuant to 11 U.S.C. 362 (d) (1) and

(2), to allow Creditor to foreclose the mortgage it holds on the Property, and it is further,

      **ORDERED**, that the 14 day stay imposed by FRBP 4001(a)(4) is hereby waived, and it is

further

###

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK (WHITE PLAINS)

-------------------------------------------------------------X          Case No. 25-22182-shl

In Re:

                                                                        Chapter 11

LEVY VENTURES LLC,

                    Debtor.                                             **CERTIFICATE OF SERVICE**

-------------------------------------------------------------X

       The undersigned hereby certifies that I caused a copy of the Notice of Motion, Motion for Relief from Stay, Declaration In Support of Motion for Relief from Stay, 362 Affidavit, FRCP55 Affidavit, and a Proposed Order Lifting Stay to be served via electronic means and/or mailed by U.S. Mail on June 26, 2025 to the parties listed below:

Levy Ventures LLC
368 New Hempstead Road
No. 244
New City, NY 10956
(via U.S. Mail)

J. Ted Donovan
Goldberg Weprin Finkel Goldstein LLP
Goldberg Weprin Finkel Goldstein LLC
125 Park Avenue Ste, 12th
Floor New York, NY 10017
TDonovan@GWFGlaw.com
(via electronic notice and US MAIL)

Department of Justice
Southern District of New York (White Plains)
Office of the United States Trustee -NY
Alexander Hamilton Custom House
One Bowling Green, Room 534
New York, NY 10004-1408
USTPRegion02.NYECF@USDOJ.GOV
(via electronic notice)

MarylandRentCourt.com
7939 Honeygo Blvd, Suite 116
Nottingham, MD 21236
(vis U.S. Mail)

Baltimore Gas & Electric Company
110W. Fayette Street
Baltimore, MD 21201
(via U.S. Mail)

Paradise city Properties
PO Box 50214
Baltimore, MD 21211
(via U.S. Mail)

Respectfully submitted,

/s/ Michael Leewright
By: Michael Leewright _____
3333 Camino del Rio South, Suite 225
San Diego, CA 92108
(858) 750-7600