UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x
In re:                                                                                    Chapter 11

Levy Ventures LLC,                                                            Case No. 25-22182-SHL

                                          Debtor.
-------------------------------------------------------------x

**DEBTOR'S MOTION FOR ENTRY OF AN ORDER REJECTING PROPERTY MANAGEMENT AGREEMENT WITH PARADISE CITY PROPERTIES; DIRECTING THE TURNOVER OF BOOKS, RECORDS AND ACCOUNTS OF THE DEBTOR AND FIXING A BAR DATE FOR THE FILING OF ANY REJECTION CLAIMS**

The debtor herein, Levy Ventures LLC (the "Debtor"), as and for its motion (the "Motion") pursuant to 11 U.S.C. Section 365, Bankruptcy Rules 2002, 3002, 3003, 6006 and 9014 and Rule 6006-1 of the Local Bankruptcy Rules of this Court, seeking to terminate its executory contract with Paradise City Properties ("Paradise") to provide property management services to the Debtor, directing the turnover of the Debtor's books, records and funds maintained by Paradise, and fixing a bar date by which Paradise is required to file any claim for rejection damages, respectfully states and alleges as follows:

**Preliminary Statement**

1.      Paradise was retained to manage the Debtor's properties in May, 2024 amid promises of a reduced cost structure and claims of expertise in dealing with HUD regulations and requirements or Section 8 housing.  Simply stated, Paradise overpromised and has underperformed.  In bankruptcy, however, Paradise has been totally unresponsive to the Debtor's efforts to report on income and expenses or produce basic information regarding its activities.  Unfortunately, it is now crystal clear that Paradise needs be replaced due to its failure to meet the Debtor's need for prompt and complete reporting.

2

2.     By virtue of Paradise's inattention, the Debtor's ability to fulfill its statutory reporting requirements in bankruptcy has been undermined, generating uncertainty among creditors and the United States Trustee.  Accordingly, the Debtor has no choice by to terminate the pre-petition agreement with Paradise and retain a replacement property manager going forward.

3.     In view of the foregoing, the Debtor now brings this Motion to reject and terminate its executory contract with Paradise, in conjunction with the filing of a separate motion seeking to retain BM as replacement property manager.

4.     The importance of immediate action is exemplified by the fact that the Debtor faces dismissal of its Chapter 11 case unless delinquent monthly operating reports are filed by August 4, 2025.  Given the timing, the Debtor is also filing an application seeking an emergency hearing on shortened notice to consider this Motion.

**Background**

5.     On March 5, 2025, the Debtor filed a voluntary petition under Chapter 11 of the U.S. Bankruptcy Code and has remained in possession of its assets as a debtor-in-possession pursuant to 11 U.S.C. §§1107 and 1108.

6.     The Debtor is a real estate investment company, which has acquired approximately 130 residential home properties (the "Properties"), primarily in the Baltimore, Maryland area.  In conjunction with the purchase of the Properties, the Debtor obtained a series of mortgage loans from a group of lenders and mortgagees.

7.     By Property Management Agreement dated May 22, 2024 (the "Contract"), the Debtor changed management companies from BM to Paradise.[1]

---

[1] The Contract was actually executed on behalf of the Debtor by Benjamin Eidlisz of Better Mgmt LLC, since he was the manager at the time.

8. The Debtor chose to transfer management to Paradise after its principals professed expertise in the operation of properties reliant upon HUD for Section 8 housing revenues, and offered a substantive discount, significantly below market rate, but assumed to be a volume discount given the large number of houses owned by the Debtor. However, Paradise proceeded to bungle the assignment. Among the myriad of deficiencies was the failure to properly interface with HUD and meet Section 8 reporting requirements, causing disruption of rent payments and an inability to connect to the Government's systems.

9. Since the start of this case the Debtor has been trying to work with Paradise to verify income and expenses so as to produce basic information needed for monthly reports. The Debtor was hoping that Paradise would right the ship to avoid causing further disruption. Indeed, the Debtor recruited Benjamin Eidlisz, a principal of BM, to consult on asset management, with no compensation, to assist with overseeing Paradise.

10. Despite all of these efforts, Paradise continues to be incapable of meeting the Debtor's reporting and management needs, particularly with respect to the extensive reporting requirements of a Chapter 11 Debtor. More importantly, Paradise's inability to answer and provide basic information has stymied the Debtor's ability to fully manage its properties and negotiate with its secured lenders.

## Legal Argument

### A. Rejection of the Contract

#### 1. Section 365(a) of the Bankruptcy Code Authorizes Rejection of the Contract

11. Under section 365(a) of the Bankruptcy Code, a trustee or debtor in possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease of the debtor." 11 U.S.C. § 365(a).

12. "Executory contract" is not a term defined in the Bankruptcy Code. *See COR Route 5 Co., LLC v. Penn Traffic Co. (In re Penn Traffic Co.)*, 524 F.3d. 373, 379 (2d Cir. 2008). The Second Circuit has characterized an executory contract as one "on which performance remains due to some extent on both sides". Id. at 379 (*quoting In re Ionosphere Clubs, Inc.*, 85 F.3d 992 (2d Cir. 1996)). The standard test of "executoriness" is the so-called "Countryman test," under which a contract is executory if "the obligation of both the bankrupt and the other party to the contract are so far unperformed that the failure of either to complete performance would constitute a material breach excusing performance of the other." *Id*. (*quoting* "Vern Countryman, Executory Contracts in Bankruptcy: Part I", 57 Minn. L. Rev. 439, 460 (1973)); *see also In re Avianca Holdings S.A.*, 618 B.R. 684, 696 (Bankr. S.D.N.Y. 2020)(stating "[m]ost courts have adopted Professor Countryman's definition of an executory contract" and applying Countryman test)).

13. In determining whether to permit a debtor in possession to assume or reject an executory contract, "the debtor's interests are paramount." *Penn Traffic Co.*, *supra*, 524 F.3d. at 383. Accordingly, the decision to reject is governed by the business judgment rule. *See In re Group of Inst. Investors, Inc. v. Chicago, Milwaukee, St. Paul and Pac. R.R. Co.*, 318 U.S. 523, 550 (1943) ("[T]he question [of assumption] is one of business judgment"); *Penn Traffic Co., supra*, 524 F.3d at 383; In re Old Carco LLC, 406 B.R. 180, 188 (Bankr. S.D.N.Y. 2009); *In re Helm*, 335 B.R. 528, 538 (Bankr. S.D.N.Y. 2006); *see also Sharon Steel Corp. v. Nat'l Fuel Gas Distribution Corp.*, 872 F.2d 36, 40 (3d Cir. 1989); *In re Armstrong World Indus.*, 348 B.R. 136, 162 (Bankr. D. Del. 2006) ("Courts have uniformly deferred to the business judgment of the debtor to determine whether the rejection of an executory contract or lease is appropriate under section 365(a)."). The "process of deciding a motion to assume [or reject] is one of the

bankruptcy court placing itself in the position of the . . . debtor in possession and determining whether assuming [or rejecting] the contract would be a good business decision or a bad one." *In re The Great Atlantic & Pacific Tea Company, Inc.*, 544 B.R. 43, 48 (Bankr. S.D.N.Y. 2016) (*quoting Orion Pictures Corp. v. Showtime Networks, Inc. (In re Orion Pictures Corp.)*, 4 F.3d 1095, 1099 (2d Cir. 1993)).

14. A debtor exercises sound business judgment with respect to its decision to reject an executory contract or unexpired lease where it determines, in good faith, that the proposed action will benefit the estate. *See In re MF Global Inc.*, No. 11-2790, 2011 WL 6792758, at *2 (Bankr. S.D.N.Y. Dec. 20, 2011) ("The assumption or rejection of an executory contract may be approved if such action would benefit the debtor's estate and is an exercise of sound business judgment."); *Helm*, *supra*, 335 B.R. at 538 ("To meet the business judgment test, the debtor in possession must establish that rejection will benefit the estate.").

15. "Generally, absent a showing of bad faith, or an abuse of business discretion, the debtor's business judgment will not be altered." *Old Carco*, 406 B.R. at 188 (*quoting In re G Survivor Corp.*, 171 B.R. 755, 759 (Bankr. S.D.N.Y. 1994)). "Courts routinely approve motions to assume ... or reject executory contracts or unexpired leases upon a showing that the debtor's decision to take such action will benefit the debtor's estate and is an exercise of sound business judgment." *In re MF Glob. Holdings Ltd.*, 466 B.R. 239, 242 (Bankr. S.D.N.Y. 2012).

16. "The [debtor], in seeking to reject an executory contract, must support the motion with evidence—usually in the form of a declaration or affidavit—demonstrating that rejection of the contract falls within the proper exercise of the [debtor's] business judgment. That standard can be satisfied upon a showing that the contract will no longer be beneficial or necessary to the estates, that it has become burdensome to the estates, or that a prompt elimination of the

attendant expenses will positively impact the [d]ebtors' ability to improve their financial condition." *Id*; *In re Times Square JV LLC*, No. 22-11715 (JPM), 2023 WL 1786408, at *4 (Bankr. S.D.N.Y. Feb. 4, 2023).

17.    As set forth below, the Contract is executory and the Debtor may reject it under Section 365(a) of the Bankruptcy Code since the decision to reject the Contract constitutes a sound exercise of its business judgment.

**2. The Contract Should Be Rejected**

18.    The Contract is an executory contract because both the Debtor and Paradise have material unperformed obligations thereunder; Paradise to provide itemized management services and the Debtor to pay for such services.

19.    Rejection of the Contract is a good business decision which will serve the best interest of the Debtor's estate by enabling the Debtor to move forward with a replacement property manager who will assist the Debtor in meeting its operating and reporting obligations as a Debtor-in-Possession.

20.    The Debtor believes this can best be accomplished by rejecting the Contract and retaining BM as the new replacement property manager. As noted above, BM is already familiar with the Debtor's operations and business plan through its prior services to the pre-petition Debtor, and its principal, Benjamin Eidlisz, has been working with the Debtor over the past weeks in an effort to restore order to the management of the Properties.

**B. Paradise Should be Required to Immediately Turnover Over All of the Debtor's Books, Records and Funds**

21.    In order for the Debtor to have a smooth transition to the new property manager, it is imperative that Paradise immediately turnover all of the Debtor's books and records maintained by Paradise relating to the management, leasing, collection of rents, and

day-to-day operation of the Properties, including leases, rent ledgers, vendor invoices, tax returns and the like. Similarly, Paradise must surrender all accounts and funds being maintained by Paradise on behalf of the Debtor, including operating accounts, security deposits, escrows and the like.

### C. Claims Bar Date

22. Upon rejection of the Contract, Paradise will have a rejection claim which would only be a general unsecured claim. *See* 11 U.S.C. § 365(g); *In re Lavigne*, 114 F.3d 379, 387 (2d Cir. 1997) ("Rejection gives rise to a remedy for breach of contract in the non-debtor party. The claim is treated as a pre-petition claim, affording creditors their proper priority."). Of course, the Debtor has substantial counterclaims against Paradise for mismanagement and breach of contract, but it is necessary to set a bar date for Paradise to file a proof of a rejection claim so that any claim asserted by Paradise against the Debtor can be fixed, subject to the Debtor's right to assert counterclaims.

23. Bankruptcy Rule 3002(c)(4) provides: "A claim arising from the rejection of an executory contract or unexpired lease of the debtor may be filed within such time as the court may direct." Bankruptcy Rule 3003(c)(3) provides: "[t]he court shall fix . . . the time within which proofs of claim … may be filed....". Bankruptcy Rule 2002(a)(7) requires at least twenty-one (21) days' notice by mail of the time fixed for filing proofs of claim and interest pursuant to Bankruptcy Rule 3003(c)(3).

24. The Debtor therefore seeks entry of an Order providing at least 21 days' notice of the deadline by which Paradise must file a proof of claim or be deemed to have waived such claim.

2

WHEREFORE, the Debtor respectfully prays for the entry of an Order consistent with the foregoing.

Dated: New York, NY
July 16, 2025

GOLDBERG WEPRIN FINKEL
GOLDSTEIN, LLP
Attorneys for the Debtor
125 Park Avenue, 12th Floor
New York, New York 10017
(212) 221-5700

By: /s/ Kevin J. Nash

2